IN ERROR,

・・・・・・

ALBANY,

April, 1820.

BEEKMAN
v.
FROST.

JOHN K. BEEKMAN, Appellant,

*against*

JOSIAH FROST, ELI GODDARD, PHILO GODDARD, and JESSE
KELLOGG, Responde n t s.

An objection not made by the party in the Court below, cannot be made in this Court. Nor can a point or question, which had it been raised in the Court below, might have been met and obviated, be raised here for the first time. *Aliter*, if the point raised here, could not, by amendment or proof, have been obviated in the Court below.

It is essential to a bill to redeem a mortgage, that the plaintiff should offer to pay the debt, interest, and costs.

That the plaintiff is a *bona fide* purchaser, for a valuable consideration without notice, is not ground for relief, though it is a good defence in equity.

As, where there was a mortgage given to secure a debt

APPEAL from the Court of Chancery. In *April*, 1808, the respondents filed their bill against the appellant, which stated, in substance, that *Frost*, one of the plaintiffs, and *Martin Goddard*, then deceased, in *August*, 1803, agreed to purchase of *Henry Corl*, jun., lot No. 33. in the town of *Marcellus*, containing 600 acres ; that, on the 19th of *September*, 1803, *Corl* conveyed 200 acres, part of the lot, to *Frost*, for which *Frost* paid him, in *August*, 1803, 300 dollars, and, on receiving the deed, 700 dollars more ; that *Corl*, in *September*, 1805, pursuant to the agreement, conveyed half of the residue of the lot to *Frost*, and half to *Martin Goddard*, and the deeds were duly recorded the 15th of *September*, 1807. On receiving the last mentioned deeds, *Frost* and *Martin Goddard* gave their promissory notes to *Corl*, for the purchase money, and which notes *Corl* assigned to others. In *September*, 1807, *Frost* sold the 200 acres of land, first conveyed to him, to *Jesse Kellogg*, one of the plaintiffs ; and *Martin Goddard* sold and conveyed his interest in the lot to *Eli Goddard* and *Philo Goddard*, two of the plaintiffs. That the plaintiffs discovered on the records, in the office of the clerk of the county of *Onondaga*, a mortgage from *Corl* to *John K. Beekman*, the defendant, dated *May* 6th, 1803, registered the 9th of *September*, 1805, to

of 3,000 dollars, which was registered as for a debt of 300 dollars only, and the plaintiff, who was a *bona fide* purchaser, without notice, filed his bill to be relieved against the mortgage, beyond the sum expressed in the registry, and to stay the mortgagee from proceeding to sell the land, under a power contained in the mortgage, &c. *Held*, that this was not a bill to redeem, and that the plaintiff could not sustain the bill for relief, though he might set up the facts as ground of defence,

The registry of a mortgage, given to secure 3,000 dollars, but, by mistake, registered for 300 dollars, is *notice* to a subsequent *bona fide* purchaser, to the extent only of the sum expressed in the registry.

Where a deed was deposited by the grantor with *W.*, as an *escrow*, to be delivered to the grantee, on his producing a mortgage executed and recorded, and a certificate of the clerk of there being no other incumbrance on record : And *W.*, on receiving the mortgage and the certificate of registry by the clerk, &c. delivered the deed to the grantee ; and the mortgage to the grantor : *Held*, that the condition was performed, and the deed well delivered to the grantee ; and that it related back, so as to give effect to an intermediate conveyance by the grantee to *C.* although the clerk made a mistake in the registry of the mortgage, as to the amount of the debt.

secure the sum of 300 dollars, payable on the 6th of *May*,   IN ERROR.
1808, with interest; on discovery of which mortgage, *Frost*
applied to the defendant, and offered to pay the sum of 300   ALBANY,
dollars, and interest, which was refused; and, to the surprise   April, 1820.
of *Frost*, the defendant stated that the mortgage, in fact, was   BEEKMAN
to secure the sum of 3,000 dollars, and which sum he demand-   *v.*
ed, saying there was a mistake in the registry as to the sum.   FROST.
That *Frost* had no knowledge or suspicion of the mortgage,
at the time of the delivery of either of the deeds from *Corl*
to him; nor had, as he believed, *Martin Goddard* any
knowledge of it, at the time of the delivery of the deed to
him ; and that *Frost* and *Martin Goddard* have sold and
conveyed the lands as aforesaid, without any knowledge or
suspicion of any other mortgage, than one for 300 dollars.
That the interest of the plaintiffs ought not, therefore, to be
affected by the mortgage, beyond the sum of 300 dollars ex-
pressed in the registry; that valuable improvements have
been made on the lot, since the purchase from *Corl;* that
the defendant is advertising the lot for sale under the mort-
gage, for the purpose of raising the sum of 3,000 dollars
&c. The plaintiffs prayed an *injunction* to stay all fur-
ther proceedings on the part of the defendant, &c.

The *answer* of the defendant stated, that, in *May*, 1803,
he had a good title to the lot in question, which he agreed to
sell on the 6th of *May*, 1803, to *Corl*, for 3,000 dollars.
payable on the 6th of *May*, 1808, with interest.   The agree-
ment was by parol ; but the defendant promised to execute
a deed, and send it to *R. Westerlo*, of *Albany*, as an *escrow*,
to be delivered to *Corl* when he should produce to *Westerlo*
a mortgage of the lot, to secure the purchase money, duly
executed by him and his wife, and registered according to
law, and a certificate of the clerk that there was no other
mortgage on the lot registered.   That the defendant, ac-
cordingly, on or about the 6th of *May*, 1803, signed and
sealed a deed for the lot, to *Corl*, who, at the same time drew
a mortgage to be executed by *Corl* and wife, which was
approved of by the defendant; and the defendant deposited
his deed with *Westerlo*, as an *escrow*, to be delivered to
*Corl*, on his producing the *mortgage* and certificate as afore-

IN ERROR.
.......
ALBANY,
April, 1820.

BEEKMAN
v.
FROST.

said. That, in *September*, 1805, as the defendant was informed by *Westerlo*, *Corl* produced, and delivered to *Westerlo*, a certificate of the clerk of *Onondaga*, dated *September* 9th, 1805, that there was no mortgage of the premises registered in his office, and that *Corl* had left in his office, that day, a mortgage executed by him and his wife, to *Beekman*, for the premises, to secure the payment of 3,000 dollars, &c. That, shortly after, *Corl* delivered to *Westerlo* the mortgage, for securing the sum of 3,000 dollars, dated the 6th of *May*, 1803, purporting to be executed by *Corl* and his wife, acknowledged by *Corl* the 7th of *September*, 1805, and registered the 9th of *September*, 1805; and that *Westerlo*, on receiving the mortgage and certificate, delivered up the deed of the defendant to *Corl;* but the defendant insisted that such delivery was not valid, because the conditions on which the deed was to be delivered, were not performed by *Corl* ; and the mortgage, though purporting to be signed by the wife of *Corl*, had not been acknowledged by her. That *Corl* having absconded long before the day of payment, and no person appearing to satisfy the mortgage, the defendant caused the lot to be advertised for sale, under the power contained in the mortgage ; that the defendant had no knowledge of the facts stated in the bill; that, in *September,* 1807, he first discovered that the clerk, in registering the mortgage, had inserted 300, instead of 3,000, dollars ; and he charged, that the plaintiffs purchased without any reference to the registry ; and that he hoped to prove that the plaintiffs and *Martin Goddard* had previous notice of the mortgage, &c.

The defendant admitted that improvements had been made on the lot, but to what extent or value he was ignorant.

It was proved, on the part of the plaintiff, that *Corl* absconded in the summer or autumn of 1803, and that his wife died in *July* or *August*, 1806. The sale of the lot to *Frost* and *Martin Goddard*, by *Corl*, as stated in the bill, was proved. One of the witnesses, *Samuel Whitney*, stated that, in *September*, 1807, he discovered the mortgage of the defendant on record, and communicated the fact to the sons of *M. Goddard*, which, he believed, was the first notice *Frost*

or *Goddard* had of it. Two other witnesses, *Russel Taylor*
and *Nathan Healy*, stated, that the deeds from *Corl* to
*Frost* and *Goddard*, were given in *September*, 1806, when
the articles of agreement for the same land were given up to
*Corl*. *Frost* gave two notes, of 420 dollars each, to *Corl*,
who had given a receipt for 130 dollars, paid before ; and
in *February*, 1806, *Corl* received 140 dollars.

*Rufus Lawrence* stated, that he paid *Corl*, for *Martin Goddard*, at two different times, 460 dollars, and *Goddard* also gave *Corl* a note for 300 dollars. The notes of *Frost* and *Goddard*, to the amount of 700 dollars, were, afterwards, seen in the hands of *Matthew Trotter*, to whom they had been assigned, and who gave them up to *Frost* and *Martin Goddard*, and took new notes, payable to himself, for the same amount. It appeared that the deed from *Corl* to *Frost*, for 200 acres, was dated *September* 19, 1803, for the consideration of 1,000 dollars, acknowledged the 11th of *April*, 1805, and recorded *July* 3, 1805 ; and the deed for 207 1-2 acres, from *Corl* to *Frost*, was dated *September* 1, 1805, acknowledged the 13th of *September*, 1806, and the 15th of *September*, 1807, for the consideration of 1,000 dollars ; and the deed to *Martin Goddard* was acknowledged and recorded at the same time. The deed from *Frost* to *Kellogg*, of 200 acres, for the consideration of 2,000 dollars, was dated the 21st of *September*, 1807, and acknowledged and recorded on the same day. There was also a deed from *Kellogg* to *Frost*, dated the 6th of *July*, 1808, for 200 acres, for the consideration of 2,000 dollars, acknowledged on the 7th of *July*, 1808, and recorded the 13th of *May*, 1809. The deed from *Martin Goddard* to *Philo Goddard*, was dated the 24th of *November*, 1807, for 50 acres, for the consideration of 400 dollars, but was not recorded ; and the deed from *Martin Goddard* to *Eli Goddard*, was for 100 acres, dated also the 24th of *November*, 1807, for the consideration of 700 dollars.

It appeared, also, from the exhibits, that the deed from *Beekman* to *Corl*, was dated the 5th of *May*, 1803, acknowledged the 11th of *December*, 1804, and recorded the 15th of *September*, 1806 ; and that the mortgage from *Corl* to *Beekman*, was dated the 6th of *May*, 1803, acknowledged

IN ERROR.
.......
ALBANY,
April, 1820.

BEEKMAN
v.
FROST.

the 7th of *September*, 1805, and recorded the 9th of *September*, 1805.

It was proved that valuable improvements had been made by the plaintiffs, on the land. One witness stated the value of them to be 2,891 dollars.

*Westerlo*, who was a witness for the defendant, deposed, that in *October*, 1804, he received a letter from the defendant, dated the 26th of *September*, 1804, in which the defendant says, he sends therewith the deed, bond, and mortgage of *Corl*, the first executed by the defendant, and to be delivered to *Corl*, provided he pays the balance, &c. and has the mortgage, *after executing it, put on record in Onondaga*, and brings the clerk's certificate that there was no mortgage or incumbrance thereon. That the witness delivered to *Corl* the deed, on his producing the mortgage and certificate, which was some time after the witness received the deed, but the exact time he could not recollect. That the certificate of the clerk was dated the 9th of *September*, 1805, and the certificate of the registry of the mortgage was of the same date ; and the acknowledgment by *Corl*, of the mortgage, was on the 7th of *September*, 1805.

After a hearing of the cause, the Chancellor, on the 3d of *October*, 1814, decreed as follows : " that it be referred to one of the Masters of this Court, residing in the county of *Onondaga*, to ascertain and report what sum or sums of money, were actually paid to *Henry Corl*, or to his endorsee or assignee, duly authorized to receive the same, by *Josiah Frost*, and *Martin Goddard*, respectively, before the first day of *October*, 1807, on any purchases mentioned in the pleadings in this cause, and made by them, or either of them, from him, prior to that date, of lands in lot No. 33, in the township of *Marcellus* ; and that the master distinguish between such payments as were made for principal, and such payments as were made for interest. That he also ascertain, and report specially, whether any, and what part of the debts arising on such purchases, were transferred by *Henry Corl*, for a valuable consideration, and were discharged, in the hands of the *bona fide* holder, prior to that period, by *Josiah Frost* and *Martin Goddard*, or either of them, by new notes or obligations ; or, if not discharged, of

which they had received notice from the assignee before *that* period. And the Master is further directed to state an account of the moneys due on the respective purchases, for principal and interest, after deducting the payments which may have been made, and the parts of the debts discharged or assigned, with notice as aforesaid. And the Master is further ordered and directed, to ascertain and report the amount of the principal and interest due on the mortgage given by *Henry Corl* to the defendant, according to the true sum mentioned in the mortgage, and, also, according to the sum mentioned in the registry thereof; and in taking the accounts aforesaid, the depositions and exhibits in the cause may be used by the parties ; and they are to be at liberty to produce further proof, which the Master is also to report; and all further questions are, in the mean time, reserved."

For the reasons of this decree, *vide* the opinion of the Chancellor in the report of the same case, 1 *Johns. Ch. Rep.* 288. 296. 304.

*Van Buren*, (A. G.) for the appellant. 1. Admitting all the facts stated in the respondents' bill, they have no right to relief in equity against the appellant. The registry of mortgages is solely for the purpose of securing priority, as to subsequent incumbrances. The registry is not necessary to give any validity to the mortgage itself. Suppose this mortgage had not been registered, and the mortgagee had proceeded to a foreclosure under the power of sale, could the Chancellor have enjoined him from proceeding ? A Court of equity would interfere only on the ground of a mistake in the registry, or because the respondents are *bona fide* purchasers, without notice. But it was for the *appellant*, not the respondents, to ask relief on the ground of the mistake, since he is the person aggrieved. Can the respondents file a bill to take advantage of a mistake committed by the clerk, to the injury of the appellant ?

2. Then, as to the other ground, this is the first attempt of a *bona fide* purchaser, in possession, to obtain relief against another. On a bill of discovery, if the defendant says, " I am a *bona fide* purchaser," and refuses to disclose his title, a Court of equity will dismiss the bill, and leave the party

*Margin:*

IN ERROR.

ALBANY,
April, 1820.

BEEKMAN ;
v.
FROST.

to seek his remedy at law. (1 *Madd. Ch.* 170, 171. 8 *Vi-ner Ab.* tit. *Discovery*, 546. 2 *Madd. Ch.* 255. 2 *Vesey,* jun. 457.) " The title of a purchaser for a valuable consideration, is no ground for relief, though it is a good defence." (*Patterson* v. *Slaughter*, *Ambler*, 192.) A Court of equity will not make a decree depriving a party of his right, on the mere allegation of the plaintiff. The plaintiff must prove that he is a *bona fide* purchaser without notice. Now, the evidence of *S. Whitney*, in answer to the sixth interrogatory, is merely an inference from circumstances, that the first notice which *Frost* and *Goddard* had of the mortgage, was in *September*, 1807. The Chancellor has decreed, upon the mere allegations in the bill, because those allegations have not been disproved by the appellant. Where a *bona fide* pur-'chaser in possession is attacked, he may state that fact as a defence in his answer under oath, and it will protect him. The respondents do not allege that *M. Goddard* had no information of the mortgage at the time *Corl* executed the deed to him. *Frost* says he had no notice, nor had *M. G.* notice, according to his, *Frost's*, knowledge and belief. But, it may be objected, that this point was not raised at the hearing in the Court below, and, therefore, cannot be urged here. But every point which, from the record, goes to the very foundation of the action, may be raised at any time. (*Palmer* v. *Lorillard*, 16 *Johns. Rep.* 353. *per Kent*, Ch. J.)

3. Both parties being equally innocent, and having, therefore, equal equity, the bill ought to have been dismissed, and the parties left to their respective remedies at law. (1 *Fonbl. Equ.* ch. 4. s. 25. ch. 5. s. 3.) The respondents have adequate remedy at law. The only questions are as to the true construction of the registry act, and as to notice ; these are questions peculiarly fit and proper for a Court of law. But we contend that the appellant has the greater equity ; his innocence is purer. The respondents made their purchase of *C.* before he had a legal title ; and they ought, before they completed their purchase, to have examined the registry, which would have led to the discovery of the mistake. If the respondents had filed their bill to redeem the mortgage, on paying the 300 dollars, they might have insisted on the relief ; but their bill

IN ERROR.
.......
ALBANY,
April, 1820.

BEEKMAN
v.
FROST.

was not filed for that purpose. (*Birne* v. *Hartpole*, 5 *Bro. P. C.* 197. 2 *Madd. Ch.* 138.)

4. The conditions upon which the *escrow* was to take effect as a deed, not having been complied with, the title never passed out of the appellant. (4 *Com. Dig. Fait. A.* 3.) The conditions were, that *C.* was to pay the balance, as stated, and have the mortgage duly executed and put on record in the counties of *Onondaga* and *Seneca*, and bring the certificates of the clerks of those counties, and of *Cayuga*, that there was no other mortgage or incumbrance. Now the mortgage never has been duly recorded; that was an essential and a very important condition; for on that the appellant relied for his security as to the purchase money. If *Corl*, or the respondents, should file a bill for a specific performance of the contract, a Court of equity could do justice to all parties. It cannot be said that the plaintiff waived this condition, for he did not know of the mistake, until after he had advertised the premises under the power of sale, in *September*, 1807.

5. The Chancellor declares that the registry is good as to the 300 dollars; if so, the appellant was entitled to that sum, with interest, in addition to the sum of 1,264 dollars and 11 cents, ordered to be brought into Court.

6. *Cole* and *Heely*, two of the respondents' witnesses, were interested, and therefore incompetent.

7. The decree, by restraining the appellant from proceeding, protects the property of persons who are not parties to the suit, and who have not applied for relief.

*H. Bleecker* and *Van Vechten*, contra. The *first* and *second* points were not raised at the hearing in the Court below, and cannot, therefore, be urged here. This is the settled rule of the Court. (13 *Johns. Rep.* 576. 14 *Johns. Rep.* 560. 2 *Sch. and Lefroy's Rep.* 712.) Nor does the observation of the Chancellor, in *Palmer* v. *Lorillard*, at all weaken or vary this acknowledged and well established rule of a Court of appeals. The appellant should have demurred to the bill. (2 *Caines' Cases in Error*, 40. 56. *Cooper's Equ. Pl.* 117.) To allow him to make the objection here, would be, in effect, permitting a demurrer in this Court.* But what are these objections? The proceeding under the

* Vide *Henry* v. *Cuyler* vol. 17. p. 469.

IN ERROR.
......
ALBANY,
April, 1820.

BEEKMAN
v.
FROST.

power of sale, which is not known in England, (*a*) is equivalent to a bill and a decree of foreclosure. (*Jackson* v. *Henry*, 10 *Johns. Rep.* 185.)   When, therefore, the respondents found their lands advertised for sale, they could only offer to pay to the appellant the 300 dollars, expressed in the registry ; and when that was refused, their only remedy, to prevent the consequences of a sale, was to apply to a Court of equity.   They were, in effect, defendants against a proceeding on the part of the appellant to foreclose the mortgage, and which was equivalent to a bill for a foreclosure.   The *answer* of the appellant puts the case on that ground, and obviates all the difficulty which has been raised.   He charges that the respondents had notice of the true mortgage, and prays that they may account accordingly, and pay to him the amount due, or that their equity of redemption be foreclosed.   The appellant thus puts himself on the jurisdiction of the Court of Chancery, as fully as if he had filed a bill against the respondents for a foreclosure.

Much has been said about notice.   It is not usual for a bill to aver a want of notice.   The fact comes out in the plea or answer.   The appellant, in his answer, alleges that the respondents had notice, and the replication puts this allegation at issue ; and it was for the appellant to prove the truth of his allegation.   Again : it was, in effect, a bill to redeem, on paying what the respondents owed, or the 300 dollars, with interest.   They do not, in precise words, pray for leave to redeem, but for relief according to their bill; and that must be on paying the 300 dollars with interest. (1 *Johns Rep.* 117. 559.   1 *Johns. Cases*, 431.)   It is said that the respondents ought to have been dismissed, and sent to a Court of law.   But could a Court of law ascertain what was due on the mortgage, or on what terms the respondents might redeem and keep possession ?   No matter, if the equity of the parties was equal.   The Court of Chancery must mete out equity to the parties according to their legal rights, or under the statute.   As to the hardship of the case on the part of the appellant; it is equally hard on

(*a*) Vide *Powell on Mortg.* 13, 14.   *Crofft* v. *Powell*, 2 *Comyn's Rep.* 603.

IN ERROR.

......

ALBANY,
April, 1820.

FREEMAN
v.
FROST.

the respondents as innocent purchasers, if they must pay the 3,000 dollars, or lose their land ; and the statute gives them the legal advantage arising from the defective registry. Every case in which a person having a second deed, procures its registry before the first is recorded, is equally hard.

3. *Corl* did perform the conditions, on which the deed was made an escrow ; he delivered the mortgage to the clerk to be registered, and the clerk endorsed the usual certificate of the registry. It was not the duty of *C.* to inspect the registry and compare it with the mortgage. The parties could intend no more than that *C.* was to produce to *W.* the ordinary evidence of the registry. *W.* was the agent of the appellant, and was satisfied ; he delivered the deed to *C.*, and *B.* himself remained satisfied for years. He proceeded to sell under the power contained in the mortgage. Now, he could not take a single step under the mortgage, without recognizing the conveyance, and that the legal title had passed to *C.* the mortgagor. He has persevered to the last, in demanding payment of the mortgage. He is concluded by his own acts. It is a contradiction for him to say, that no title passed to *C*, and yet insist on his rights under the mortgage. Besides, the deed took effect from its date, and the titles of all intermediate purchasers are protected by it. (*Jackson* v. *Bull*, 1 *Johns. Cases*, 81.)

4. The Chancellor admits the mortgage to be good for 300 dollars ; but it is a question whether the mortgage was good for any thing, until after a notice *in fact.* The act concerning mortgages (1 *N. R. L.* 372. *sess.* 36. *ch.* 32.) directs that the clerk shall enter in the register the names of the parties, the date of the mortgage, the *mortgage money*, the time when payable, the description of the land, &c. Now, a mortgage which is not so registered can have no effect at all against a *bona fide* purchaser. The registry in this case did not contain the mortgage money. The mortgage was not duly registered. The requisites of the act must be strictly complied with. If one omission or defect be overlooked, another may claim the same indulgence; and it is not easy to see where the mischief may end. It is a general complaint against Courts of justice, that

they are too eager to help cases out of the operation of wholesome statutes. The appellant has his remedy against the clerk. Again ; if the registry is not good, the respondents are not bound to pay the 300 dollars. If good, it must be by an equitable construction of the statute. If the appellant has equity, so have the respondents, who ought not to be charged with the payment of the 300 dollars, and the interest, without notice *in fact.* The registry was not *notice,* within the meaning of that word, as applied in a Court of equity. (2 *Sch. & Lef.* 64. *per Lord Redesdale.*) It was not such a notice as should stop the respondents from paying the purchase money to *Corl.* (*Spencer, J.* 1 *Caines' Cases in Error,* 120. *Sugden's L. of V.* 469, 470.) Admitting, however, that the registry was notice, it was effectual no farther than to oblige them to retain the 300 dollars, with interest, which they have done.

5. If any of the witnesses were interested, the appellant should have taken the proper measures in the Court below to prevent or suppress their testimony. Not having done so, the objection now comes too late. But they proved nothing material, except the payment of money by *Frost* to *Corl.*

6. The objection that the decree gives relief to persons not parties, is, in effect, an objection of the want of proper parties ; and the plaintiff should have availed himself of it by demurrer or plea, or at the hearing in the Court below. (*Cooper's Equ. Pl.* 185. 289.) If not insisted on there, it cannot be made, on appeal, in this Court. (1 *Johns. Ch. Rep.* 437. 9 *Johns. Rep.* 591.) But these persons had no interest in opposing the decree ; and if they had been made parties, it could have no effect to vary the decree.

The respondents stand before the Court as *bona fide* purchasers, who are always entitled to the protection of a Court of equity. (*Sugden's L. of V.* 476. 496. 513. *Newland on Contracts,* 515. 2 *Vesey, Junr.* 454. 9 *Vesey,* 24.)

*T. A. Emmet,* in reply. 1 and 2. The first and second points, though not made in the Court below, go to the whole merits of the case, and it would be against all principle to exclude the consideration of them. The rule is, that where

IN ERROR.
.......
ALBANY,
April, 1820.

BEEKMAN
v.
FROST.

there is a clear case of equity against the party, and he raises in this Court a new point, which, if it had been stated in the Court below, might have been obviated, he shall be deemed to have waived it by his silence. In *Gelston* v. *Hoyt*, (13 *Johns. Rep.* 561.) and *Franklin* v. *Osgood*, (14 *Johns. Rep.* 527.) there were perfect grounds of relief, independent of the point newly raised in this Court. (*James* v. *M'Kinnon*, 6 *Johns. Rep.* 543.)

This is not a bill to redeem. It is founded on a mistaken notion of being entitled to relief, as a *bona fide* purchaser, without notice ; and the prayer is to stay the sale of the premises under the power. It is essential to a bill to redeem, that it should offer to pay the amount due to the mortgagee; and in that case, there is a final decision as to the rights of the parties. Here the decree is for a perpetual injunction, if the 300 dollars, with interest, is brought into Court ; otherwise the bill is dismissed. The prayer for general relief cannot go further. Though it may be resorted to, where the party has a decided equity, to protect him from injury, yet it is not used where the parties have equal equity. It is against the rules of pleading for the defendant to pray relief in his answer. If he has ground for relief, he should file a cross bill. Then, this bill stands merely on the equity arising out of the circumstance of the respondents being *bona fide* purchasers. Now, a case is not to be found of a bill filed for relief on that ground only. Being a *bona fide* purchaser, is not an equity, though it may rebut an equity. It is a shield, not a sword, as Lord *Eldon* observed. No notice, is a negative affirmation, not susceptible of proof. It is, however, good matter of defence, on the oath of the defendant, and if not contradicted by proof, it stands on his oath. But, the Chancellor says, it is averred in the bill, and is not contradicted by the evidence. But it is unprecedented in Chancery pleadings, that an allegation in a bill, not contradicted by proof, should be the basis of a decree for relief. Every injunction bill is on oath. Each party swears for himself. The respondents were to elect either to consider the registry a nullity, and so a sale under the power could not affect them, or to deem it a valid registry for 300 dollars, and then file a bill to redeem.

IN ERROR.
. . . . . . .
ALBANY,
April, 1820.

BEEKMAN
v.
FROST.

But, it is said, that a sale under the power is a statute foreclosure; true, as regards every person claiming an equity of redemption; but not so, where the party does not admit the registry as valid, but relies on his paramount title as a *bona fide* purchaser, without notice. This case is, therefore, very different from that of *Jackson* v. *Henry*. Again; it is said, that the advertisement for sale is, in effect, a bill, to which the bill of the respondents is an answer. But this is a perfect anomaly in pleading. Strike out the averment in the bill of a want of notice, and then how will it stand? The averment was not proved. It was not a bill *quia timet*.

Again; it is said the statute gives the injured party a remedy against the clerk. But, suppose the property of the respondents had been sold under the power; the respondents would then have been the persons injured. We contend, that the mortgage not having been duly registered, the deed to *Corl* remains an *escrow*, and the respondents, as purchasers under *Corl*, are the persons injured by the defective registry. The rule of a Court of equity is, that it will not assist any person against a *bona fide* purchaser without notice; not that it will assist such a purchaser against another. If the registry is a nullity, *Corl's* title is good; otherwise, it is bad. This is a question of law. The *English* Courts consider the question as to constructive notice, properly cognizable in equity; our Courts consider the question as to a *bona fide* purchaser, as matter of law. It is true, that the appellant cannot obtain the 300 dollars and interest, without filing a bill.

Admitting the bill to contain matter of equitable jurisdiction, it is, nevertheless, deficient in many particulars essential to such a bill. There is no allegation, that at the time *Corl* treated with the respondents, he was seised, or pretended to be seised, of the land. It does not aver a consideration, and the actual payment of it. (*Cooper's Equ. Pl.* 281.) It merely states, that 1,000 dollars were paid, but how, or when, is not mentioned. To entitle themselves to relief, the respondents must aver and prove every thing essential to that relief. *Frost* does not aver want of notice; nor is there any such allegation as regards *Goddard*.

The oath of *F.* is not evidence. The proof must be according to the allegation, and in regard to *Goddard*, a want of notice is not alleged. The lot was sold in parcels in *August* and *September*, 1803, and it is a fair inference from the facts stated, that it was subject to the mortgage. If they knew that there was a mortgage, the inference is, that they knew of the actual mortgage ; and if the cause had been tried by a jury, there can be no doubt that they would have found that the respondents had notice of the actual mortgage.

3. The deed was delivered as an *escrow*, and the conditions have not been performed to this hour. An *escrow* cannot become an absolute deed, without a strict performance of the condition ; and that is matter of law. A condition precedent must be strictly performed. A performance *cy pres*, is not sufficient. *W.* was a special agent, for a particular purpose, and if he gave up the deed to *C.* before the conditions were performed, the act does not bind the appellant. The advertisement by the appellant was made under a belief that the mortgage had been duly registered ; and that the title was in *C.*

4. On the principle of the decree, the appellant was entitled to the 300 dollars, with interest, in addition to the money brought into Court. Whatever distinction may exist in the *English* Courts, as to the registry being notice, it has not been adopted here. (2 *Johns. Rep.* 510.) The Chancellor admits, that the registry is notice to the extent of the facts contained in such registry. If, then, the respondents purchased with a knowledge of those facts, why should they not pay the 300 dollars ? It is said, the respondents are to be regarded as sureties, and bound only to pay out of the balance due from them to *C.* But if, in fact, they purchased subject to the mortgage, the land is bound by it. If they had actual notice of the real sum due on the mortgage, there could be no doubt ; and to repel the presumption arising from the facts, they ought to show, that by their contract with *C.*, he was to pay off the mortgage.

5. The objection was raised, at the hearing, in the Court below, to the competency of *Healy* and *Cole*. (1 *Johns. Rep.* 295.) The objection was distinctly made by the counsel for the appellant. It was not necessary to file articles to im-

IN ERROR.
.......
ALBANY,
April, 1820.

BEEKMAN
v.
FROST.

peach their competency.   Whenever, at any time, and in any stage of the cause, the interest of the witnesses appears, on their examination, their testimony is to be rejected. (3 *Johns. Rep.* 566.   *Trustees of Huntington* v. *Nicoll.*)

6. The objection, that the decree affords relief to persons not parties, is not an objection of a want of parties, though it might have been made.   *H.* and *C.* came in as strangers, not as privies.

SPENCER, Ch. J. The first point made by the appellant's counsel is, that the facts stated in the bill, give the respondents no rights, as plaintiffs, in a Court of equity. It has been answered, that this objection is not now open to the appellant, as it was never taken in the Court below.   This question has frequently arisen, and it is necessary that it should now be settled in such a manner, that no future embarrassment may be experienced.   The cases in this Court in which the point has been noticed, are *James* v. *M'Kinnon*, (6 *Johns. Rep.* 543.) *Gelston* v. *Hoyt*, (13 *Johns. Rep.* 562.) *Sands* v. *Hildreth*, (12 *Johns. Rep.* 493.) *Lyon* v. *Tallmadge and others*, (14 *Johns. Rep.* 501.) *Palmer* v. *Lorillard*, (16 *Johns. Rep.* 348.) In *Chamley* v. *Lord Dunsany and others*, (2 *Sch. & Lef.* 712.) Lord *Eldon*, in speaking of an account of personal estate which had been insisted on at the bar, as necessary to the decision of the cause, said, it was not looked for by any one of the parties, and as the point was not made below, it could not be made by way of appeal.   Lord *Erskine*, in the same cause, (p. 719.) observed, " that all objection on that score is removed, because, it appears, that every one of the parties litigant, supposed such account unnecessary, and the conduct of the appellant, in making the objection here, is like that of a party who would seek to set aside a verdict; because evidence was not given to a jury which he had in his power at the trial, and would not give."

Without repeating what fell from different members of this Court in the cases referred to, all of which are reconcilable, the principle to be extracted from them I believe to be this :   That no party shall be allowed to surprise or mis-

IN ERROR.
.......
ALBANY,
April, 1820.

BEEKMAN
v.
FROST.

lead his adversary. Thus, if a party in the Court below, shall purposely suffer a decree or judgment to pass against him, by default, without contesting it there, he shall not be heard here; or, if counsel shall, for the first time, raise a point here, which might have been obviated, had it been made in the Court below, he ought not to be permitted to do so.

In the case of *Gelston* v. *Hoyt*, this Court refused to hear the demurrer argued here, because the counsel had purposely declined arguing it in the Supreme Court; and had thereby deprived the plaintiff below of a right which would have been granted to him; the right of having the pleading demurred to amended, if vicious, on payment of costs; a privilege this Court could not grant. It would, in such a case, operate as a fraud, to lie by, and suffer judgment to pass by default, with the view of subsequently seizing on the same point in this Court, and impose upon the party the accumulated costs of the whole action, if the pleading demurred to was bad. Such a course of proceeding would, also, defeat the provisions of the constitution, requiring the reasons of the decree or judgment to be made known to this Court.

But where a cause has been defended in a Court below, and comes here for review, and a point is made here which could not be obviated in the Court below, by proof or amendment, I am clearly of opinion, that this Court ought not to refuse cognizance of such point. We may not, it is true, upon such point, have the reasons of the judgment in the Court below; but this consideration cannot, and ought not, to preclude this Court from entertaining such point. To those conversant with judicial discussions, it is well known, that the re-examination of a cause, before a Court of *dernier resort*, is admirably calculated to elicit truth, and to detect any error, whether of the counsel or Court, which may have taken place at an earlier discussion of the cause. Counsel not only come better prepared from the previous discussion, but all their faculties are put in requisition for the final and last hearing. A point decisive of the cause may have been overlooked by the counsel and the Court; a point too, probably, growing out of the case, which no

IN ERROR.
.......
ALBANY,
April, 1820.

BEEKMAN
v.
FROST.

evidence or amendment could alter or shake. Can it, then, consist with sound reason, or a sacred regard to indivdual justice, that this Court should close its eyes, and refuse to see that which may decide a cause, because it had not been before observed? I think not. The cases of *James* v. *M'Kinnon, Lyon* v. *Tallmadge, Palmer* v. *Lorillard,* are strong authorities in support of my position; and they are not weakened by the other cases, if correctly understood. The case, too, of *Le Guen* v. *Governeur and Kemble,* (1 *Johns. Cas.* 436.) shows, that though this Court expect to be informed of the reasons of the Court below, it is not confined to those reasons. In that case, an appeal was made from an order directing a feigned issue. This Court were of opinion; that such issue ought not to have been directed, but proceeded to hear the cause on its merits, and made a final decision. This procedure was justified by precedents in the House of Lords. There, the Chancellor had given no opinion on the merits; yet it was not considered an obstacle to the final hearing here. Upon the whole, I cannot doubt the right of this Court, nor its duty, in hearing and deciding the first point now raised.

To the first point, wether the facts stated in the bill, give the respondents a right to proceed in a Court of equity, as plaintiffs, it has been answered, that the bill is substantially a bill to redeem, and that the facts set forth, and the case made out, are of equity jurisdiction, and entitle the respondents to the relief decreed.

It is certainly an essential part of a bill to redeem a mortgage, that it offer, in express terms, to pay the amount due, with costs. The bill usually states a prior tender of the money, and a refusal to accept it. It seems to me impossible to consider this as a bill to redeem the mortgage. Its frame and object were to obtain a decree setting aside the respondent's mortgage for any greater amount, than the sum for which it was erroneously registered. In terms, it does not pray a redemption of the mortgage, and it omits, what I consider an all important averment, the readiness to pay whatever shall be decreed. The mortgagor, on the non-payment of the money, has a right to foreclose the

equity of redemption, by a bill in equity. The proper parties being before the Court, the mortgage and its non-payment being established, there is a decree for the payment of the principal and interest within a specified time, or in default thereof, that the mortgagor and those claiming under him be barred of their right to redeem. The mortgagor has a correspondent right to call on the mortgagee in equity, to accept his principal and interest, and costs at law, and to reconvey all his interest under the mortgage, free from incumbrances. A bill to redeem operates, in one respect, like a bill to foreclose; for if it be dismissed, in default of payment of the money, at the time specified, it has the precise effect of a foreclosure, and is equivalent to a foreclosure. (2 *Madd.* 420.)

The Chancellor never treated or considered this as a bill to redeem; and if the respondents failed in complying with that part of the decree ordering, the payment of the money adjudged to be due, it does not draw after it the consequences of a foreclosure. It is an established rule in equity, that relief inconsistent with the specific relief prayed for, cannot be given, under the general prayer for relief. A bill seeking general relief, and omitting an essential requisite to constitute it a bill to redeem, cannot be so regarded, nor draw after it the consequences incident to such a bill.

The foundation of the bill is, that the respondent was taking measures to sell the mortgaged premises, under a power in the mortgage from *Corl,* for securing the payment of 3000 dollars, whereas, it was registered as a mortgage for 300 dollars only; setting forth a purchase from *Corl,* the payment of part of the consideration, and the execution and delivery of notes for the residue. I shall consider the averment of the bill to be, that *Frost* and *Goddard,* at the time of the conveyance to them, had no knowledge of the appellant's mortgage, and that they were *bona fide* purchasers.

In *Patterson* v. *Slaughter,* (*Ambl.* 293.) Lord *Hardwicke* laid down the rule to be, that the title of a purchaser, for valuable consideration is not ground for relief, though it is a good defence. No book of precedents, no treatise

IN ERROR.
.......
ALBANY,
April, 1820.

BEEKMAN
v.
FROST.

on equity, furnishes a case of a bill filed on the ground that there has been purchase without notice and for valuable consideration.    Lord *Eldon* thus explains the defence : " the principle of the plea is this, I have honestly and *bona fide* paid for this estate, in order to make myself owner of it, and you shall have no information from me, as to the perfection or imperfection of my title, until you deliver me from the peril, in which you state I have placed myself, in the article of purchasing *bona fide*." ·

If the defendant has an equal claim to the protection of a Court of equity, to defend his possession, as the plaintiff has to the assistance of the Court, to assert his right, the Court will not interfere on either side.    This is the case when the defendant is a purchaser for a valuable consideration, without notice ; this he may plead in bar of the suit ; and the plea must always be put in upon oath. *(Mitford Pl.* 215.) The respondents attempt to make use of the fact of a *bona fide* purchase, for valuable consideration, and without notice, as a substantive ground of equity for offensive operation ; thus inverting the order of proceeding, and wholly dispensing with the essential part of what is merely a defence ; I mean the oath of the purchaser to his plea.    Here there is no oath or proof of the fact, that the respondents were purchasers within the rule ; for the swearing to the bill by one of the respondents, for the purpose of an injunction, is, in no sense, the oath required to such a plea.    As was to have been expected, there is no proof that the respondents had no notice of the mortgage as one for 3,000 dollars, before their purchase.    In the nature of things, they could not prove that they had not notice.    The appellant was entitled to have their denial of the fact of notice, and their averment that they were purchasers *bona fide*, and for valuable consideration, under oath. These considerations are, I apprehend, sufficient to show that the decree cannot be sustained.

As the case has been argued at large, and as it may save litigation and expense, to have the opinion of the Court on the merits, I proceed to examine them.    Should the respondents file a bill to redeem the mortgage as registered, on

IN ERROR.

ALBANY,
April, 1820.

BEEKMAN
v.
FROST.

paying the 300 dollars, and interest and costs, the appellant must either avail himself, by answer, of the mortgage, as one for 3,000 dollars, or file his cross 'bill to foreclose it as such; the question would then arise, supposing the respondents to be *bona fide* purchasers without notice, what would be the rights of the parties? This involves the third point, whether the conditions upon which the *escrow* was to take effect, as the appellant's deed, have been complied with, so that the title passed to *Corl*. The conditions were, that *Corl* should pay the balance then due, and *have the mortgage*, (after executing that and the bond) *put on record*, and bring a certificate from the clerk that no mortgage or other incumbrances were against the lots; Mr. *Westerlo* was then to deliver the appellant's deed to *Corl*. The deed was delivered on proof satisfactory to the agent; but it is contended, that the condition of having the mortgage put on record was not complied with; because, there was a mistake in the registry, in recording the mortgage, as one for 300 dollars, when it was, in fact, for 3,000 dollars; and that, therefore, the delivery of the deed was unauthorized on the part of the agent. This condition must receive a reasonable construction. It was not an act expected to be done by *Corl* personally, for he had no right or power to do it; this duty entirely appertained to the clerk. It would be unnatural and unreasonable, to construe this condition in any other way, than that *Corl* was to deliver the mortgage to the clerk, or his deputy, to be put on record. We ought not to interpret the condition with reference to the mistake which has occurred; and it is clear that we cannot construe it literally. Had there been no mistake in the registry, can any one doubt, that the condition would have been fulfilled by *Corl's* delivering the mortgage to the clerk to be recorded, and that he had recorded it. It might, then, with the same force, be objected, that *Corl* did not personally put it on record. But, it is said, the mortgage was not recorded, in consequence of the mistake. It was recorded inaccurately; yet it was recorded, so far as respected *Corl*. Surely, it cannot be required of him, that he should stand by and see that the clerk does his duty. Both the appellant and Mr. *Westerlo* were satisfied, for a

IN ERROR.
......
ALBANY,
April, 1820.

BEEKMAN
v.
FROST.

long time, that *Corl* had performed the condition ; thus the appellant left in *Corl's* hands the evidence that he was the owner of the property, and the power to implicate third persons relying on the fact, that *Corl* was the owner of the land, he having the appellant's deed for it. To insist, after such a lapse of time, as against third persons, upon the non-fulfilment of the condition, appears to me inequitable and unjust ; and I, therefore, entirely concur in the opinion expressed by the Chancellor, that the deed was well delivered ; that the condition was performed according to the views, expectations, and instruction of the parties ; and that it related back so as to validate the conveyance to *Frost* and *Goddard.*

I, also, agree with the Chancellor, and for the reasons he has expressed, that the respondents are not to be charged with notice of the contents of the mortgage, any further than is set forth in the register, unless actual knowledge of the mortgage is brought home to them. I consider the respondents liable for the 300 dollars, with interest, and for any balance in their hands beyond that sum, and as to which they had not committed themselves to third persons, when they were informed of the real amount of the mortgage. I perceive no reason why they should pay the 300 dollars and interest, and, also, in addition to that, the balance in their hands, for if we admit that the registry was notice, as I think it was, to the amount of 300 dollars, the respondents have a right to say, that the sum unpaid, and in their hands, was intended to be applied towards satisfaction of the mortgage. I regret, that the bill was not so framed as to enable the Court to put an end to the controversy ; but justice must be administered on established principles, and according to established forms.

The decree must be reversed, with directions to the Court of Chancery to dismiss the bill, without prejudice to the respondents' rights.

WOODWORTH, J. It is objected by the respondents' counsel, that several points not urged in the Court below, are now relied on as grounds for reversing the decree. That the cause was fully argued before the Chancellor, ap-

pears from the report; and if it shall now appear, that the case presents important questions on the merits, to which his attention was not called, I should rather incline to believe they had escaped the researches of counsel, than that they were designedly waived or abandoned, for the purpose of bringing them, in the first instance, into view in this Court. The rule is, undoubtedly, salutary, that no party shall be permitted to pass the Court below in silence, and thereby make this a Court of *original*, not *appellate* jurisdiction ; neither will this Court listen to objections, which, if made in the Court below, might have been removed by the exercise of the ordinary powers of the Chancellor, previous to, or at the hearing. But where the justice and law of the case are intimately connected with the new points raised, and are so material, that had they occurred either to the Court or the counsel, it is evident they would have been examined, it would be a perversion of justice to deny a party the right to bring them into review when the cause is heard on appeal. In *Palmer* v. *Lorillard,* (16 *Johns. Rep.* 353.) it is said, " that the rule was only intended to be applied to objections, that the party may be deemed, by his silence, to have waived, and which, when waived, still leave merits of the case to rest with the judgment. But if the foundation of the action has manifestly failed, we cannot, without shocking the common sense of justice, allow a recovery to stand." I consider the first, second, and sixth points, raised by the appellants, as embraced by this principle, and essential to be considered, in order to arrive at a correct decision.

I will examine the first and second points in connection.

The appellant contends, that the facts stated in the respondents' bill, give them no right to proceed against the appellant, as plaintiffs, in a Court of equity ; that both parties being equally innocent, and having equal equity, the bill should have been dismissed, and the parties left to their remedies at law. The scope of the respondents' bill is to obtain relief against the appellant's mortgage, on the ground that they are purchasers *for a valuable consideration, without notice, concluding with a prayer for general relief.* The question then is, whether, according to the course of the

IN ERROR.
.......
ALBANY,
April, 1820.

BEEKMAN
v.
FROST.

Court of Chancery, this relief can be sought affirmatively by bill, or whether the party must not rely on it, by way of defence. If the facts charged, are only available when averred *in the plea or answer*, it follows they cannot form the ground for a decree, when alleged in the bill. The reason is obvious; they will, in many cases, protect and shield a defendant when assailed, but they do not permit him to become the assailant. I have not met with a single case where the allegation of being a purchaser for valuable consideration without notice, was ever deemed sufficient to decree relief against a defendant, having equal equity with the plaintiff, nor indeed to any relief whatever; although the books contain numerous cases, where the same state of facts would constitute a perfect defence. In the case of *Paterson* v. *Slaughter*, (*Ambler*, 292.) Lord *Hardwicke* recognizes this distinction; in that case, the defendant having put in his answer, discovered that the person under whom he claimed, was a purchaser for a valuable consideration, without notice; on petition to take the answer off the file, and put in a new answer, two methods were proposed, to give the defendant the benefit of this discovery: 1st. To file a cross bill; 2d. To put in a further answer. As to the first, the Chancellor observes, " *the title of a purchaser for valuable consideration, is not ground for relief, though it is a good defence.*" If we examine this point, independent of authority, I apprehend we should arrive at the same conclusion; the material allegations in the bill are, that the plaintiffs are purchasers for a valuable consideration, without notice; but how can a plaintiff prove the want of notice? It is not susceptible of proof, from the very nature of the inquiry, without resorting to the evidence of the party averring the want of notice. When he elects to become plaintiff, he cannot testify for himself; the allegations in the bill are not evidence for him; they must be proved, or admitted, before relief can be granted. The case of a defendant in Chancery is widely different; no decree can be made against the positive denial in his answer, unless disproved by two witnesses, or by one witness and circumstances. In many respects, the defendant is viewed in the light of a wit-

IN ERROR.
••••••••
ALBANY,
April, 1820.

BEEKMAN
v.¹
FROST.

ness, as well as a party. There is manifest propriety, then, in saying, that a purchaser, without notice, must act on the defensive; as a defendant, his oath, in the first instance, is competent testimony to prove the fact. He is the only person who can testify, that he had no notice; it rests within his knowledge   Third persons, it is true, may state facts and circumstances which render notice improbable, but there still is better evidence resting in the bosom of the defendant, which enables him, and him only, to say he had no notice when he purchased; but the moment he quits this rampart, and becomes plaintiff, he incapacitates himself. He is the only witness who can prove the fact; but, as plaintiff, he must make out his case *aliunde*. His shield, it is true, remains, but he has no weapons for offensive war.   While defendant, his oath is sufficient, until the plaintiff charges him with notice by competent proof; but, when plaintiff, his opponent may rest on his arms, in safety, because the fact cannot be established, *prima facie*, so as to claim relief.   If we examine the proof on behalf of the respondents, it will be seen, that as to the question whether the purchase was made without notice, we are left to conjecture.   I have already shown that the oath of the respondents is not evidence; it can establish no fact, and must be rejected; if want of notice can be made out, the testimony must be derived from a different source.   What, then, is the proof to support this essential part of the case?   It is derived from the testimony of *Samuel Whitney*, who says, " that in the fore part of *September*, 1807, he discovered the mortgage in question, on record in the clerk's office of *Onondaga*, and communicated the fact, immediately, to one of the sons of *Martin Goddard*; and he knows, that his communication was the first notice the said *Goddard*, or *Frost*, had of the said mortgage, from the circumstance of *Samuel Goddard's going the very next day to the clerk's office*, to examine the records as to the fact; and, also, from the *alarm* they discovered, on their knowledge of its certainty.   That his situation was such, that he would, in all probability, have heard of said mortgage as soon as *Frost* and *Goddard*."   This is the only testimony to this point; and it may serve as an illustration of a preceding remark, that want of notice is a fact

IN ERROR.
......
ALBANY,
April, 1820.

BEEKMAN
v.
FROST.

which can only be proved by the party denying it, and cannot be established by evidence *aliunde*; if it could, in any supposable case, it cannot be pretended that this evidence amounts to any thing.    The facts stated by *Whitney*, are not inconsistent with full knowledge previously received by *Frost* and *Goddard*.   This position will be obvious from a moment's consideration.    *Whitney* discovered the mortgage in *September*, 1807; but how does this prove that *Frost* and *Goddard* had not discovered it previously?   *Whitney* communicated his discovery immediately, to one of the parties; but this does not prove that it was any discovery to *Goddard*; *non constat*, but that he knew the fact before; but *Whitney* knows, that this was the first notice to *Frost* and *Goddard*; How? Does he state a fact altogether inconsistent with previous notice to them, and on which he founds his knowledge? No: but *Goddard* went the next day to the clerk's office to examine; the answer is, he might have been informed repeatedly before, and become chargeable with notice of the existence of the mortgage, and yet not have been at the clerk's office; for it must be kept in mind that want of notice is not confined to the mortgage on record, but is a denial of a knowledge of the existence of the appellant's mortgage, whether registered or unregistered.    The other circumstance relied on by the witness, is the alarm they discovered.   Now, the answer to this is, that neither their acts nor declarations can ever be made use of in their favour, although good evidence, if they make against them; besides, if it was contemplated that want of notice could be established by mere negative testimony, such as this, connected with the acts of the parties, to be benefitted by establishing the fact, we should expect, in such a case, that their conduct and acts would correspond with the intent, and be calculated, at least, not to raise a presumption against them.   The alarm, then, whether real or pretended, cannot be adduced, legally to establish any fact; for it is not susceptible of proof, any more than the want of notice itself. From the preceding considerations, I apprehend, it abundantly appears, that being a purchaser for valuable consideration, without notice, does not, of itself, form a substantive ground of relief by bill; and, secondly, that if it did, the proof

IN ERROR.
.....
ALBANY,
April 1820.
~~~
BEEKMAN
v.
FROST.

offered by the respondents failed to establish the fact. For the purposes of justice, there is no necessity, that a party averring want of notice, should be protected, other than by way of defence. In that case, having at least equal equity with the party seeking relief, he must prevail; but the case assumes a different aspect, when in the character of plaintiff, he asks the interposition of the Court to restrain a party, having equal equity with himself, from proceeding at law. If the appellant can, at law, prevail against the respondents, Chancery will not disturb him, because, both parties being innocent, and the equity equal, it will not interfere. Whether the appellant can have a perfect remedy at law, is not the inquiry. We leave the parties to contest their rights at law, without the restraint or interposition of a Court of equity.

In applying this principle to the case under consideration, it will produce no injustice, or even hardship; for he who has superior right at law, has also equal equity with the party against whom he succeeds. I am aware, however, that in the situation in which the present parties are placed, a resort to a Court of equity may become necessary, to protect the respondents against probable loss. If the appellant was proceeding to foreclose his mortgage by advertisement, according to the statute mode of foreclosure, then, for the safety of the respondents, it would be necessary to file *a bill to redeem;* for whether the mortgage could be enforced by the appellant, for the whole sum due, or not, I have no doubt it was a valid registry to the amount of *three hundred dollars.* If, therefore, a sale had taken place, the purchaser would, undoubtedly, hold discharged of the respondents' title; and if the premises were bid off for a sum equal to the appellant's demand, which is not to be doubted, the respondents might in vain seek to compel the appellant to pay over to them the amount exceeding the sum for which the mortgage had been registered. A bill to redeem this mortgage, by paying the 300 dollars and interest, would be a proper proceeding on the part of the respondents; in which bill it might be expedient to state the whole case, and, among other things, to aver, as they have in the present bill, that they were purchasers for valuable consideration,

IN ERROR.
. . . . . . .
ALBANY,
April, 1820.

BEEKMAN
v.
FROST.

and without notice, not on the ground that such allegation was competent proof, or any proof at all, to establish the fact affirmatively, but as a denial, for the purpose of repelling any presumption or inference, that they had knowledge or notice of a mortgage of a greater amount than the sum inserted in the registry ; and but for the denial so made, such presumption or inference might be attempted to be raised and founded on the silence of the respondents on this point in their bill.   In such a case, I incline to think redemption would be decreed on paying the amount registered, and such sum as should appear to have been unpaid by the respondents, on their purchases, at the time they were affected by notice, according to the principles of the Chancellor's decree.   It must, however, be understood, that such relief could only be granted on the supposition, that the deed to *Corl* had taken effect, and the appellant was obliged to look to the mortgage only for indemnity.

The counsel for the respondents contended, on the argument, that this was a bill to redeem ; but the authorities cited do not support the doctrine.   The case of *Warren* v. *Rathbone,* (10 *Johns. Rep.* 587.) is not analagous.   It is there decided, that " where a Court of equity gains jurisdiction of a cause, for one purpose, it may retain it generally ;" but this has no connection with the question, whether the bill in the present case contains the essential requisites of a bill to redeem.   On looking into precedents, it will be found that no fact is better established, than that the plaintiff who seeks redemption, must aver, " that he is ready to pay what is due for principal and interest on the mortgage."   It can require no argument to prove that this is indispensable.   How can the Chancellor decree a redemption, without payment of what is due?   It would be nugatory to make such a decree, unless the plaintiff makes the offer of payment.   The plaintiff cannot be compelled to redeem on the terms of payment ; it is at his election to do so or not.   If he makes no offer, he does not lay the foundation for a decree to redeem, nor can he expect it, although the bill may contain a special prayer for that purpose.   In this cause, the bill states, that on the discovery of the mortgage registered, *Frost* applied to the appellant, and proposed to pay the three hundred dollars,

and interest, which he refused to accept; this was some time before the filing of the bill: The offer is not made in the bill, nor does it appear by any thing contained in it, that they were willing to pay the money when the bill was filed; it is rather to be inferred, that the respondents contemplated relief on different grounds. The prayer of the bill is for an injunction to stay all proceedings under the mortgage, and for general relief. I do not consider this (unaccompanied with an offer to pay) as sufficient to authorize a decree to redeem. And, consequently, the case, as made out by the respondents, cannot, according to principles well established in the Court of Chancery, be sustained.

With these remarks, I might dismiss the further examination of this cause, but as the parties may be disposed to bring up the question for relief in some other form, I think it will be useful now to decide another question presented for the consideration of the Court, which, if decided against the respondents, puts this controversy at rest. I refer to the question whether the title to this lot ever passed out of the appellant. The examination of this point leads us to consider, whether the deed from *Beekman* to *Corl* was delivered as an *escrow,* and upon what conditions; and, secondly, have the terms or conditions agreed on between the parties been performed? If they have not been performed or waived by the appellant, the respondents cannot have relief in any shape, for in that event, they acquired no interest in the land by the purchase from *Corl.* The loss in such a case, of necessity, and rightfully, falls on the respondents ; they purchased of, and confided in, the integrity of *Corl.* That confidence was, indeed, misplaced, and we impart to the victims of fraud and deception our commisseration, while we deny relief at the expense of a party who has not contributed to bring on them their loss.

In *October,* 1804, the deed from *Beekman* to *Corl,* was received by Mr. *Westerlo,* inclosed in a letter, also covering a mortgage to be executed by *Corl* for the consideration money. The instructions in the letter are definite and certain. " *The deed to be delivered to Corl, provided he pays the balance now due as below stated, and has the mortgage (after executing it and the bond) put on record in the counties of Onondaga and Sene-*

IN ERROR.
. . . . . . .
ALBANY,
April 1820:

BEEKMAN
v.
FROST.

*ca, and bringing a certificate from the clerks of Onondaga, Se-neca, and Cayuga, that no mortgage or incumbrance are against those lots."* This constituted a delivery as an *escrow*, and is so considered by the Chancellor. A deed, so delivered, has no operation, and is not to take effect, until the conditions are performed. (*Co. Lit.* 36.) In construing the conditions on which the delivery was made, we are bound to give effect to the words made use of, according to their *known signification*, and, by such rule of construction, arrive at the intent of the appellant. When the words are perfectly plain and intelligible, we are not at liberty to say, the appellant intended something different, however plausible may be such a supposition. When the grantor says the deed shall take effect on the existence of a fact, we cannot put it on the production of evidence of that fact, however probable it may appear, that had the evidence of the fact, such as exists in this case, been proposed to the grantor, at the time he made the conditional delivery, he would have been willing to substitute it for the fact itself. Until his consent is obtained, it would be a violation of all principle to change the meaning of the words employed. It would, in fact, be making contracts for parties, instead of adjudicating on them. The Chancellor says, (and here, I apprehend, is the foundation of the error,) " the clerk's certificate of the registry was all that the letter to *Westerlo* could have intended." How this can be correctly said, I cannot conceive, for the appellant has no reference to the certificate, but the fact of putting on record. He does not say, that he will receive any, nor what kind of evidence of the fact, but he insists on the fact itself for his security ; he had a right to say so ; it was a prudent precaution ; on this point he was not disposed to risk any thing. In the certificate there might be mistake or fraud, and thereby he might sustain loss; but if the fact existed, to wit, a true registry of the mortgage, his security was unquestionable. The appellant was about parting with his property, at a fair value, to *Corl* ; he tells him, in substance, you shall have my title if you secure me. You, the mortgagor, must perfect the security. You are to receive the benefit of my title, when you have performed on your part; if casualties or mistakes occur, in carrying into

effect the stipulation on your part, you must abide the consequences. The Chancellor seems to suppose, that if it was intended that actual registry should first be made, then it would become necessary for the agent to go to the county of *Onondaga ;* and this, he says, was not expected. My answer to this is, that where the words used are plain, arguments *ab inconvenienti* can never be listened to, in order to prove an intent against the obvious meaning of the words. Whatever was required by the instructions, was the law to the agent, and he was bound by it, if he acted at all; he could not bind his principal beyond his authority, and in this case, being a special agent for a definite purpose, his acts beyond his authority were void.

That the intent of the appellant was as I have endeavoured to prove, is abundantly manifest, from that part of the instructions intended to guard against other mortgages or incumbrances on the lot; as to that fact, the appellant is satisfied with the production of a certificate from the clerks of *Onondaga, Seneca* and *Cayuga,* but not so as to the mortgage to be executed by *Corl ; putting on record, is the indispensable requisite* to give validity to the deed. That this has not been done is admitted, for an erroneous registry is no performance. But, it is contended, on behalf of the respondents, that if the conditions have not been performed, there has been a waiver; and that the appellant has affirmed the deed, by advertising under the mortgage ; and His Honour the Chancellor, considers, that the appellant, by receiving the mortgage, with the evidence accompanying it, has thereby affirmed the delivery of the deed. When the mortgage was received by the appellant, the fact of the non-registry was unknown to him, and continued unknown until *September,* 1807, when *Frost* apprised him of the fact. The waiver of non-performance necessarily pre-supposes a knowledge of such non-performance. The question, then, occurs, how could the appellant waive what he did not know. Even in the case of a forfeiture, against which Courts of law lean, the forfeiture is not waived when there is no knowledge that it has been incurred. If the lessor be ignorant that a forfeiture has been incurred, acceptance of the rent is not a waiver of it ; (*Jackson* v. *Bronson,* 7 *Johns. Rep.* 227.) much less ought the waiver of the conditions to be admitted

in this case, when the effect of it is to deprive the appellant of a security calculated, and intended to protect him. That the appellant may have believed, that the mortgage was correctly registered, is highly probable; the certificate would induce such a belief, but, still, it might be incorrect, and, as I have already observed, was not the thing stipulated. It did not conclusively establish the fact, but was merely evidence of it. If it turned out that the mortgage had been registered, the deed took effect; if it did not, the title did not pass, and the appellant claimed nothing under the mortgage. He might well receive it, knowing, that in the event of a non-registry, he could derive complete protection under the conditions upon which his deed was delivered. That it was competent for him to ratify the deed, and affirm the mortgage, is admitted, but it is denied, that either is to be inferred, without knowledge brought home to the appellant, and his acts of affirmance subsequently.

The same reasoning applies to the fact, that in *August*, 1807, the appellant caused the mortgaged premises to be advertised under the mortgage. It will be remembered that, at this time, and until *September* after, the appellant remained in total ignorance of the mistake in the registry, and could not thereby be said to affirm the deed. On this question of affirming the deed, and accepting the mortgage, by acts done without knowledge of the mistake, let me ask, had the appellant known, that the registry of the mortgage was only good for 300 dollars, and such other sum as he might realize by bringing home notice to the purchasers, would he, for a moment, have hesitated in rejecting the mortgage altogether? The course that would have been taken is too plain a proposition to admit of doubt, yet, it is contended, that this election shall be denied, in consequence of acts done before a discovery was made, that the security was defective. The principle, it appears to me, would be an anomaly in our laws, demoralizing in its consequences, and subversive of justice and fair dealing in the community.

I have said that the mortgage was advertised in *August*, 1807. This fact is derived from the admission in the answer. The counsel for the respondents ask, admitting that the appellant was ignorant at the time he advertised, why did he pro-

ceed afterwards, until arrested by the Court of Chancery?
The answer to this is conclusive ; in the first place, there is
not a particle of evidence in the cause, that the appellant
ever did a single act, or that the notice of sale under the
mortgage continued a single day, after the discovery was
made. It would be wasting time to prove, that the allega-
tions in the bill, if it contained any on this point, are not
evidence ; but there is no averment that the notice was con-
tinued after the discovery of a defective registry. The answer
does not admit it, and no testimony has been given respecting
it, consequently, the fact is not before the Court, but if it
should be conceded, that the advertisement, which was in-
serted in *August*, 1807, was not discontinued on the disco-
very of the error, it does not prove any act of recognition.
The appellant was not called upon to act until the time of
sale ; then, indeed, he would arrive at a crisis, when it
would become necessary to determine. Before that time,
the appellant remained passive ; he may have omitted to
discontinue the advertisement ; and now we are called to
conclude him, because he did not act. I apprehend, that this
doctrine is equally unsound with that relied on, as derived
from the acts of the appellant, done before he had know-
ledge of all the facts ; besides, between the time of disco-
vering the defective registry and the day of sale, he had
time to deliberate, whether to affirm or disaffirm the mort-
gage. When he was first informed, it was impossible to
decide what the result would be, if he pursued the mortgage.
He was a stranger to the respondents and their purchases.
The information he received ascertained the fact only, that
the mortgage could not be enforced beyond 300 dollars,
unless notice could be brought home to the respondents ; if
notice could be made out, then, indeed, he could not secure
his debt, on the ground of a registered mortgage ; but his
redress would be equally certain, on the principle, that the
respondents purchased with notice. Now, if the appellant's
omission to discontinue the advertisement, compels him to
look to the mortgage for security, it causes this flagrant in-
justice, on the face of it ; to wit, you shall elect *instanter;*
time cannot be allowed to ascertain the facts, without a
knowledge of which, no election can be made with prudence

IN ERROR.
.......
ALBANY,
April, 1820.

BEEKMAN
v.
FROST.

or safety. I have thus shown, I think, conclusively, that the acts done before knowledge of the registry, and the omission to act afterwards, do not lay any foundation for a decree, adjudging that the appellant has, by his acts, given effect to the deed, and affirmed the mortgage; and, consequently, that the respondents are not entitled to any relief as against the appellant, on the facts appearing in this case, admitting that no objection could be taken to the pleadings.

From the view I have taken, it becomes unnecessary to notice particularly, two minor points made by the appellant's counsel, with respect to the interest of *Healey* and *Cole*; it does not appear, that they were interested when examined in chief; neither was their testimony essential, nor is it noticed by the Chancellor in the opinion delivered. If their testimony before the master was objectionable, exceptions should have been taken to it, on the coming in of the report: and as to relief being extended to persons not parties, if the decree was sustainable in other respects, it might be modified so as to protect those only who are parties before the Court.

On the whole, after a careful examination of this cause, with all the attention in my power, I have arrived at a conclusion, satisfactory to my own mind, that the respondents, as against the appellant, are not entitled to any relief, and, consequently, that the decree of His Honour the Chancellor, be reversed, and the bill of the respondents dismissed.

* For *reversing*, 15; for *affirming*, 10.

A majority of the Court* concurring in the opinion delivered by the *Chief Justice*, it was thereupon ORDERED, ADJUDGED and DECREED, that the decree of the Court of Chancery be reversed, and that the bill in the Court of Chancery be dismissed, without prejudice to the respondents; and that the record and proceedings be remitted, &c.

Decree of reversal.