## RUTLAND COUNTY,

FEBRUARY TERM, 1836.

PRESENT, HON. CHARLES K. WILLIAMS, *Chief Justice.*
" SAMUEL S. PHELPS,
" JACOB COLLAMER, } *Assistant Justices.*
" ISAAC F. REDFIELD,

SAWYER and ROGERS *vs.* JAMES ADAMS.

When a town clerk copies a deed delivered to him for record on a book which has ceased to be a book for recording for a number of years, and does not insert the names in the alphabet, for the purpose of concealment and fraud, such deed is not recorded, and is no notice to after purchasers, or attaching creditors.

This was an action of ejectment commenced at the county court against Cyrus Adams and James Adams. Cyrus Adams suffered a default. But James set up a title under a deed from Cyrus. The cause was passed to this court by exceptions taken by the plaintiff to the charge of the court to the jury on trial below.

The facts in the case are stated by the chief justice in delivering his opinion.

*Mr. Smith for plaintiff.*—We contend the defendant has not procured his mortgage to be recorded in compliance with the statute. The delivery of it to the town clerk and procuring the entry to be made which appears on the back of it was not doing what is necessary to give priority of title. The statute makes no provision for such entry, but on the contrary is explicit, that a deed shall be recorded at full length, and unless so recorded shall only operate between the parties and their heirs.—Stat. chap. 50, no. 1; sec. 20. No. 5; sect. 1 and 2; chapt. 18 no. 1; sect 5, 6, 8. Constitution chap. 2, sect. 35.—*Allen vs. Everts,* 3 Vt. R. 10.—*Stewart vs. Henshaw* do. 264.—*Stevens vs. Brown* do. 420.

The recording of the mortgage on the back leaf of the old book of records was a nullity. The object of the statute is notice of conveyance for the security of purchasers. But this record was

secret and wholly inaccessable to any one but the parties. It was <span>RUTLAND,<br>*February*,<br>1836.</span> an evasion of the statute, and in judgment of law is as no record.

*Astor* vs. *Wells* 4 Whet. R. 466. The defendant having had <span>Sawyer et al.<br>*vs.*<br>Adams.</span> a reasonable time to procure his mortgage to be recorded cannot call upon the court to dispense with the statute unless he shows notice in the plaintiffs actual or constructive. It is admitted in the case the mortgagor remained in the open and peaceable possession of the premises long after the plaintiffs' attachment. It does not appear the mortgage of the defendant was left with the town clerk and by him kept on file, and nothing is shown on the part of the defendant which would make it necessary for the plaintiffs to inquire after and to take notice of it.

No foundation is therefore laid for constructive notice, and actual notice not being pretended, the plaintiffs' are *bona fide* purchasers without notice, and their title must prevail.—*Beekman* vs. *Frost*, 18 John. R. 466.—*Barnes* vs. *Hawley*, 2 Conn. R. 467.—*Pridge* vs. *Tyler*, 4 Mass. R. 541.—*Farnesworth* vs. *Child* do. 637.—*Huntingdon* vs. *Miner*, 5 Vt. R. 54.—*Skinner* vs. *McDaniel* do 539.—*Same* vs, *Same*, 4 Vt. R. 421.

If it be said the defendant ought not to suffer for the wrongful act of the town clerk, all we have to reply is, that he has not procured that to be done which the statute has made necessary to give priority of title.

It is a general rule where a statute directs a thing to be done in a particular way it cannot be done in any other way.—6 Bac. Ab. 337.—1 Swift's Digest 155.—*Metcalf* vs. *Gillet*, 5 Conn. R. 400. In the case of a party claiming title under a deed from an administrator, executor, or collector, or the levy of an execution, he must show proceedings agreeably to the statute. It is the duty of the court to construe a statute so as to suppress the mischief and advance the remedy. In the absence of notice to give effect to an unregistered deed would defeat the object the legislature had in view in requiring a registry.

It would amount to a repeal of the statute. The defendant must take his remedy against the town clerk, or the town.—Stat. chap. 50, no. 5, sect. 112.

*Messrs. Ormsbee and Royce for defendant.*—We contend that the jury having found the defendant to be entirely free from all fraud or collusion with the town clerk, having also found that he delivered the deed to the town clerk to be recorded, that the town clerk received the same for such purpose, and returned such deed

RUTLAND,
*February*,
1836.

Sawyer et al.
*vs.*
Adams.

to James Adams as recorded, these facts as it respects James A. constitute a sufficient recording to pass the title to James Adams against all persons whatever.

The law makes certain forms necessary to the passing of the title of real estate—of these some are to be performed by the grantor, some by the grantee, and some by an officer of law.

The grantee in this case has done all in his power, he has left the deed with the proper officer to be completed.

The law presumes that he will do his duty; if he does not he is accountable for damages to all persons aggrieved; but the law never intended to put it in his power to prevent the transfer of real estate.

It is further to be observed in this case, that it is merely a question as to which of the parties shall ultimately call on the town.

In the present case the title of the defendant was the elder title. He was in possession under his deed.

The defendant had accepted his title and being in possession, could not himself proceed to prosecute until eviction, 'without taking upon himself the burden of establishing both positions, that his deed was bad, and the other party had the better title. In other words he would be called upon to defeat his own title, however detrimental to his own interest it might be.

The opinion of the court was delivered by

WILLIAMS, Ch. J.—The plaintiffs, being creditors of Cyrus Adams, attached the premises in question, recovered judgment and levied their execution thereon.

The defendant, James Adams, being in possession of the premises, they commenced their action against James and Cyrus Adams. James set up a title under a mortgage deed from Cyrus of a prior date, duly executed and acknowledged and on which there is a certificate of Cyrus, who was then town clerk, that it was received for record and recorded. On referring to the records it is found that the mortgage deed was recorded on the back leaf of volume third of said records, on which there had been no deeds recorded for upwards of twelve years previous to the time said mortgage purported to be recorded. On the back leaf of the fourth volume of records another deed from Cyrus Adams to James Adams, dated June 3d 1826, was copied as recorded, although the last deeds recorded on that book, were in May 1820. In the fifth volume of the town records there was no record of the deed in question, although it was the book where others, received in June and July 1826, were recorded.

It further appears, there was no paging on the book beyond page 424 nor in the place where the mortgage was copied or recorded. In the alphabet it is found that the names of the parties to this deed are not entered, either as referring to the place where the deed was recorded, or attempted to be recorded, or to any other book or place. It is admitted in the case, that the mortgage deed was secretly and fraudulently recorded by the said Cyrus Adams, who was then town clerk of the town of Middletown, on the back leaf of an old book of records; and it must also be considered as established by the verdict, that James had not consented nor was privy to this fraudulent act of Cyrus Adams, the grantor and town clerk. The whole question is, was this deed of mortgage duly recorded. For, if it was, the plaintiff and all others are bound to recognize it, and are considered in law as having notice of its contents. If it is not duly recorded, and the plaintiffs had no actual notice of its execution and contents; on the principle that a conveyance of a later date duly registered is to have priority to a deed of an earlier date not recorded, the title of the plaintiffs must prevail. In the first place it may be remarked, that an act false and fraudulent is usually considered as no act, but as a mere nullity. The expression, therefore, that the deed was fraudulently recorded, was probably intended as referring only to the intentions and designs of Cyrus Adams; not as expressing that the placing the deed in the book where it was found, was, in itself, a fraudulent act. Without, however, attending particularly to this, it will be proper to enquire what is meant by recording a deed, and what is the object of such a record ; and upon the answer to these enquiries it will be determined whether this mortgage has been duly recorded.

On the first particular, there is but little doubt that recording means the copying of the instrument, to be recorded, into the public records of the town in a book kept for that purpose, by or under the superintendance of the officer appointed therefor. This recording may and does take effect from the time the deed or instrument is delivered to the officer, if it is in due time placed upon the records. The delivery of the deed to a town clerk, or his minute on the same that he has received the same for record, are not the recording ; but the record, if completed, is considered as taking effect from that time. Hence, if the deed is by the grantee taken from the possession and custody of the clerk after he has received it, and again returned, the record can only be considered as

RUTLAND,
February,
1836.

Sawyer et al.
vs.
Adams.

RUTLAND,
*February.*
1836.
_____
Sawyer et al.
*vs.*
Adams.

taking effect from the time it was returned. This was decided in a case of *Brush* vs. *Cook*, in Franklin county Jan. 1824.

Furthermore, the deed must be duly recorded. Hence if the deed, as it appears on the record, contains defects which would render it void, if they existed in the original, although there are no such defects in the original, such deed is treated as not recorded. The cases which have been decided on this principle, *Huntington* vs. *Cobleigh*, *Skinner et al.* vs. *McDaniel et al.* in Vermont Reports, are but following the principle decided in Popham's Reports, " that an enrolment remains good, notwithstanding omissions by the clerk, *when the omissions are not that which is of any substance in the deed.*"—Sir Francis Englefields case, Popham 21.

If the town clerk in recording a deed, through accident or design, carelessly or falsely records or describes the boundaries in a deed, so that it would appear to convey but a part of the land conveyed in the original deed, the record would be good only, and considered as notice only of a conveyance of so much as appeared on the record to be conveyed. In the case of *Beckman* vs. *Frost* 18 Johns. 544, the registry of a mortgage of 3000 as a mortgage of 300 was considered as notice only of an incumbrance for the sum stated in the record. In such cases, the purchaser may be wholly free from fault or negligence. He may deliver his deed to the proper officer and it may be returned to him as recorded, but through accident or design it is not truly recorded. Subsequent purchasers or creditors, having no other means of knowledge of the contents of the deed than by resorting to the records, cannot be considered as having notice of any other conveyance than such as appeared on record.

The object of recording, as has already been noticed, is for the purpose of notice to after purchasers and creditors. In considering what is necessary to complete a record, it will not answer to say that the record may be so made as entirely to defeat the object for which it was designed. The purchaser may fairly deliver his deed to the town clerk. The clerk may return it to him with a regular certificate that it has been recorded; and if he does nothing more; if he does not record it in fact, there is no actual or constructive notice to purchasers of the existence of such deed. The clerk is guilty of fraud, and the person who left the deed for record is deceived; still his deed is not recorded and no title passes thereby, except as against the grantor and his heirs. In such a case there can be no doubt that the purchaser will lose his

Rutland,
*February,*
1836.

Sawyer et al.
*vs.*
Adams.

title through the fault or fraud of the town clerk. In applying these principles to the case under consideration, we cannot hesitate in saying that the mortgage deed of the defendant has not been recorded, and that the act of the town clerk was as wholly inoperative as if he had written this deed on a slate, or copied it into his family record. The duty of the clerk was plain, to record this deed in the book where he was then recording other deeds; and it seems that he had then recorded as far as the fifth volume or more. Book 3, in which this deed was recorded, was not the book for recording deeds at that time, and had ceased to be so for more than twelve years. It was a book of records full and completed, and not a book in which deeds were thereafter to be placed. Such a record as was attempted by the town clerk was not, and it was designed that it should not be any notice to the creditors of Cyrus Adams, and was as palpable a fraud and as gross a deception as was ever attempted by any man in a public office. The deed was not recorded in a book kept for that purpose, and undoubtedly was kept from the alphabet for the very purpose of deception and concealment. We cannot consider that this deed was recorded according to the letter or spirit of our constitution and laws upon that subject ; and unless we admit that a deed may be recorded in any place, where the town clerk may choose for the purpose of concealment and not for notice, and which he may call the records of a town, we must treat this record as a mere nullity. A variety of new cases have been supposed in argument, in which a town clerk might literally perform the duty and yet render his act wholly ineffectual. We cannot say, how ingenious, or corrupt and fraudulent public officers may be in evading the laws ; nor are we to suppose that cases may exist more flagrant than the one under consideration. In one of the cases supposed, of the clerk recording a deed and immediately gluing two leaves together, or cutting out the one containing the record, it may not perhaps be material to enquire what would be the effect of such an act. The same thing might be done by any other person. Either of them in such a case would be guilty of forgery and exposed to the penalty of the law therefor. If the deed was actually recorded and the duty enjoined by law done and performed, it is not necessary to declare what would be the effect of such after proceedings ; but I can say for myself that, if I believed the town clerk recorded the deed, having at the time the intention to cut it out or efface it as soon as recorded, and did so cut it out or efface it, I should be loth to say that such a deed had ever been recorded. In the case

RUTLAND,
February,
1836.
——
Sawyer et al.
vs.
Adams.

supposed, of his keeping weekly books in which he recorded such deeds as he chose, if it was done for no justifiable reason or excuse, but for the purpose of concealment and fraud, it would not and ought not for a moment to be considered as a compliance with the statute.

The result to which we come is, that the mortgage deed has not been recorded; and we do this with less reluctance, as the defendant has a clear and undoubted remedy against the town clerk and against the town, if he has not been in any way a party, or consenting to the fraudulent act of the town clerk. The remedy of the plaintiffs, in the event of a decision the other way, is not so clear. Indeed, if the mortgage of the defendant had been recorded, they had constructive notice, and proceeded with knowledge of the existence of the deed, and probably could have no remedy.

The judgment of the county court is reversed and new trial granted.

PHELPS, J., *dissenting.*—That the proceedings of the town clerk in *this* instance were grossly culpable and illegal, is conceded on all hands. That he was guilty of a flagrant breach of official duty, is equally clear. And it is further conceded, that the tendency, as well as intent, of this breach of duty was to defeat the main purpose of the law, which requires deeds to be recorded. But the question for our consideration is, not whether such irregularity, with the fraudulent purpose attributed to the officer, is to receive the sanction of courts of justice, but it is, what are the particular legal consequences of this official misconduct; who is to be considered as the party primarily injured, and who is entitled to a remedy against the officer, or those responsible for him.

If, on the one hand, we hold that the deed in this instance was not duly recorded, or in a legal sense not recorded at all, the consequence is, that the town clerk is liable to the defendant for his default. If, on the other hand, we hold that the deed was recorded, and the requirement of the statute of conveyances satisfied, then, if the plaintiffs have been injured, by what may be well denominated a fraudulent concealment of this record, they have their remedy, in like manner, against both the town clerk and the town which appointed him.

An attempt has indeed been made to distinguish between the two suppositions. But if the town clerk be responsible at all, for official misconduct to the party injured, it would be difficult, I apprehend, to distinguish between the case of a purchaser, whose deed he had neglected to record, and a purchaser, from whom the

existence of a prior recorded conveyance had been fraudulently concealed. It is the duty of the town clerk, not only to record all deeds committed to his hands for that purpose, but when recorded to show that record to any person who may desire information on the subject. A fraudulent concealment of such record, by which a purchaser is deceived and injured, is most clearly an official default, for which an action will lie. It is true, that the remedy of the plaintiffs, in this instance, might not be so clear, because there is strong reason to suspect that the attachment and levy were a matter of experiment, designed to secure a hopeless debt by superceding the defendants mortgage. If such be the case, the plaintiffs remedy against the town clerk would indeed be doubtful, for the best of all reasons, to wit, the absolute want of all equitable foundation for it.

RUTLAND,
February,
1836

Sawyer et al.
vs.
Adams.

A concise view of the duties of the town clerk will show, not only that either of these parties might have a remedy against him, according as our decision may be, but will also show that those duties so far as they are due to individuals, and can be made the basis of a remedy by suit, are of a two-fold character.

Those duties are pointed out in the act relating to town meetings and town officers.—Rev. Laws p. 408. Section 20 provides, " That a book or books, with an index or alphabet to the same, suitable for registering deeds, &c., shall be kept in each town in this state." This part of the officer's duty concerns the public alone. " And it is hereby made the duty of the town clerk, or register, truly to record all deeds and conveyance, &c., when by law it becomes necessary." Here is a duty to the party whose deed the law requires to be recorded, and it is clear that, for a default in this respect, he is the only party who can seek a remedy.

The same section provides further, that " if any clerk shall neglect or refuse to record any deed, or conveyance delivered to him to record as aforesaid," (this has reference to the person whose title is evidenced by the deed) " or shall refuse to give any copy of any record, in his possession, or shall, on proper request, refuse to show any record, or file, in his office, the clerk so neglecting, or refusing, shall forfeit and pay," &c. " And shall also be liable for all damages to the party injured, to be recovered," &c.

What is here said, as to giving copies and showing his record, has reference, not to the party whose deed may be recorded, but to others who only can, from the nature of the case, be the party injured.

By the act of Nov. 1816, sec. 2, the several towns are made

RUTLAND,
February,
1836.
Sawyer et al.
vs.
Adams.

liable to make good all damages, which shall accrue to any person, or persons, by reason of the neglect or default of any town clerk by them appointed.—Rev. Laws p. 420.

Our whole system then on this subject is briefly this. The law, as a matter of convenience and expediency, requires all conveyances of real estate to be recorded in certain offices, thus furnishing a place to which all persons may resort to ascertain the state of the title. And the object of this is to give notice not to the parties to the conveyance, but to strangers. But in order to carry this policy into effect, it becomes necessary to compel the grantee to get his deed recorded, and this is done by rendering the deed inoperative against strangers, unless it be recorded. An officer is appointed in each town for this purpose, whose duty it is, to record all conveyances, and, to secure the party whose deed is required to be recorded, the town clerk is made liable to him, if he neglect to record any deed, and the party is injured. When the deed is recorded, the title is perfected, the town clerk has discharged his duty to the party to the conveyance, who has no further interest in the official duties of the town clerk. But the object of the law is not yet attained. That object is to give notoriety and publicity to the conveyance, and to enable others to ascertain the state of the title; and, for this purpose, the town clerk is required, not only to give copies, but to subject his record to the inspection of every person, and all persons, who shall have occasion to examine it. He is subjected in case of refusal, not only to a penalty, but to all damages to the party aggrieved. Now who is the party aggrieved in this case? Most clearly, not the party whose deed is recorded, but the person who desires a copy, or wishes to examine the title.

In this view of the subject, it is obvious that the clerk has separate and distinct duties to perform. A duty on the one hand to the person whose deed he is required to record, and, a duty on the other hand to the person who finds it necessary to inspect the record. These are separate and distinct. One may be fully discharged and the other not; and if the first be discharged and the rights of the party once established, those rights can not be affected by a failure in the other by which a third person may be injured or defrauded.

It is obvious then that a deed may be so recorded as to satisfy the requirement of the statute of conveyances, and still, through the default or misconduct of the town clerk, the great purpose of the law may not be fulfilled. The legislature so understood it, and

RUTLAND,
February,
1836.

Sawyer et al.
vs.
Adams.

have provided accordingly. They did not suppose that, if full information was not given, to all who might be interested, the title would necessarily be invalid. They have assumed that it would be otherwise, and have provided a remedy for the party injured.

When therefore the court have established the position, that, in this instance, the main purpose of the law has not been answered, that the desired information, or the requisite facilities for information have not been furnished, they have established no more than what was conceded in the outset. They have arrived at the precise point whence they started, but have not advanced a step towards a decision of the question before us.

. That question is this. There has been gross misconduct in · the officer. In consequence, the law has not been carried into effect, in its spirit and intent. Through that misconduct, the great purpose of the law may not have been answered. Third persons may have been deceived in relation to the estate in question. Now is that misconduct of a character which necessarily vitiates the defendant's title, under his deed, or is it such, as merely subjects the town clerk to damages at the suit of the party injured? In one case our decision must be for the plaintiff, in the other for the defendant.

In my judgment it is a case of the latter kind. The defendant deposited his deed with the town clerk for record. It is recorded at length, and truly. It is recorded in the book, or one of the books, which constitute the record of the titles to lands in the town. There it lies, side by side, with other conveyances, upon the same leaves, and within the same cover, and may be read by any person, who will open the book, at the right place; and he could read no other, which is there recorded, if he did not. It is a part of that record now, and will remain so while the record itself shall last. Where then is the difficulty? Why, there is an anachronism in the record. The deed is recorded with others of a more ancient date, and not in juxtaposition with others of a cotemporaneous date. What then. Is it not nevertheless a part of the record? Can any distinction be taken between this leaf and the preceding? It is the *back leaf*. Well, if it be not a part of the record, for that reason, tear it out, and let the next, and the next, in succession, be obliterated or expunged, for the same reason.

But the deed is so placed, in relation to others of a cotemporaneous date, that a person, examining the record, in the usual manner of a partial examination merely, would not probably discover it; and this with a design, on the part of the town clerk, that it

RUTLAND,
*February.*
1836.
Sawyer et al.
*vs.*
Adams.

should escape observation.  This is the whole complaint.  But in the first place, I do not see how the fraudulent purpose, or intent of the officer, should affect the question whether the deed be recorded or not.  It is there, in the book, and can be found by any person, who will examine the whole record.  It is intimated that a fraudulent act is a void act, and with this view this is called a fraudulent recording.  But it is impossible to predicate fraud of the mere act of recording.  The fraud, if any, must consist in the transposition of the record, for the purpose of concealment.  And if there be fraud in the measure adopted, to prevent those examining the record from discovering the deed, it is beyond my comprehension to understand how the maxim, that a fraudulent act is a void act, can apply.

In the next place, I admit, that the fraudulent purpose of the town clerk would subject him to an action, at the suit of any injured party, but I can not conceive how any such measure should affect the validity of the title.  Suppose the plaintiffs in this case had examined the record, before making their attachment, and had discovered the record of the deed in question ; are we prepared to hold the record void, and the title defective, simply because the town clerk did not intend they should discover it?  Or suppose another creditor had done so, should we hold the title good as to him and void as against the plaintiffs ?  Yet our decision carries with it that consequence.  Nor can we avoid that consequence, by the suggestion, that the plaintiffs would, in that case, have notice of the deed, which we all understand is equivalent to its being recorded.  By the very supposition, the plaintiffs would derive notice from the record alone.

Now if the record be a nullity, how can it operate as notice to any one ?  And if it be held good, as to all who might actually have knowledge of it, the controversy is at an end, it is not void ; and it would be absurd to hold it bad, because others might not discover it.

It is very clear that if a record of a deed is illegal and void knowledge of such void record is not legal notice of the existence of the original deed.  If then we hold this record to be void, we must also hold it ineffectual, 'although the particular deed thus spread upon the record, may have been exhibited and specifically pointed out to the plaintiffs before they made their attachment.  The absurdity of such a decision is most glaring, when we consider, that the gist of the complaint in the case is the supposed attempt at concealment.

From the very nature of the supposed fraud, therefore, it would

RUTLAND,
February,
1836.

Sawyer et al.
vs.
Adams.

not, in my judgment, operate to avoid the defendant's title; but might subject the town clerk to damages, if the plaintiffs were actually injured.

I can see no equity in the plaintiffs' case. They seek to set aside the defendant's mortgage, who is a *bona fide* creditor, having a prior specific lien on the property in question, and this, simply upon the ground of the irregularity in the record of the mortgage. How are they affected by that irregularity? If they examined the record, and there found the defendant's mortgage, how are they injured? Was it of any consequence to them, whether it was found on one page or another? If they did not examine, but attached at random, as is generally done where a debtor becomes notoriously insolvent, of what moment is it, whether they could have discovered this mortgage with greater or less facility, if they had searched for it. If they did examine, and were misled by the act of the town clerk, they have their remedy against him. Upon this point, I may add, that the statute above cited, which subjects the town clerk to damages, for refusing to show any record or file in his office, is, so far as it gives a remedy to the party aggrieved, a remedial statute, and as such is to be construed liberally. A fraudulent concealment of a record would unquestionably be considered within the spirit of the law, and equivalent to a refusal to show it. Indeed if there were doubt on this point, there can be none that an action would lie at common law, independently of the statute.

If therefore the plaintiffs are entitled to recover, it must be upon the ground of strict law, and upon the ground that the defendants title under his mortgage is defective, for want of recording.

Has the mortgage been recorded, agreeably to the requirement of the statute of conveyances?

On this point I premise, that the case of mis-recording a deed, is altogether different from the one under consideration. Thus, in the case of *Beekman* vs. *Frost*, 18 John. 544 a mortgage for $3000 was recorded as a mortgage for $300. The record was held to be notice only of a mortgage for the smaller sum. This decision necessarily grew out of the very principle of the recording system. If the purchaser could not rely on the record, the record was worse than useless; it was a means of deception. But how does the principle of that case bear upon the question before us? In such a case, I admit the town clerk would be liable to the mortgagee because he had not discharged his duty to him, in not recording his mortgage correctly. But does it follow that such

RUTLAND,
*February,*
1836.
Sawyer et al.
*vs.*
Adams.

would be the case, if the mortgage were truly recorded, but the town clerk had deceived a subsequent purchaser, by suppressing or concealing the record?

By the 36th section of our Constitution, it is provided, that " all deeds and conveyances of land, shall be recorded in the town clerk's office in their respective towns, and, for want thereof, in the county clerk's office of the same county."

By the 5th section of the act relating to conveyances, (Rev. Laws p. 167,) it is required, that deeds of lands be " recorded at length in the clerk's office of the town, in which such lands &c. lie." These two provisions contain the whole law which requires a recording of the deed in question, and, in connexion with the statutes before cited, relating to the duty of town clerks, all the statutory provision bearing upon the question under discussion. All that is here required is, that the deed shall be recorded at length in the town clerk's office. I find nothing here, as to the order in which deeds shall be recorded, whether in the exact order in which they may be received, nor do I find any direction, as to how many books shall be used at a time. Nor is there any restriction as to recording any particular deed, in the book, in which the clerk may then be recording other deeds. Every thing concerning the systematic arrangement of the records, with a view to convenience of reference, is left to the discretion of the officer, under the sanction of his official responsibility.

I admit that the deed must be recorded at *length,* in a *book,* which is already, or which becomes upon the recording of the deed, legally a part of the record of land titles in the town. But when this is done, I hold the title to be perfected. I can not admit that the town clerk is thereafter to be regarded as the agent of the party, whose deed is recorded, for the purpose of giving notice of the the deed, nor that the party is responsible for the officer's doings. Hence, if the town clerk should afterwards obliterate, obscure, or even tear out the record, it would not, in my apprehension, defeat the title. It is said that this would subject the party to the penalty of forgery. What then? Would the title be affected? Suppose the clerk should destroy his alphabet, which would render it necessary to examine the whole record in course, could it be said that the record would be rendered null and the titles defeated?

It is said that the town clerk should have recorded this deed, in the book in which he was then recording other deeds. I admit the propriety of this rule, as directory merely; but I can not agree, that, if his book be full, and a new one procured, the first deed

RUTLAND,
February,
1836.
Sawyer et al.
vs.
Adams.

recorded in it is not legally recorded; nor that the validity of the record would depend upon the subsequent recording of other deeds in the same book.  Cases indeed may, and have occurred, where a book has been laid by, and afterwards resumed; yet it never was suspected, that such a proceeding vitiated the record.  It appears to me, that if the book be appropriated to the purpose of recording deeds and no other, that it may legally be used for that purpose, so long as a space is left to be occupied; and I do not understand what is meant, when it is said, that it is not a book kept for that purpose.  Suppose a book is in use, but the town clerk, not liking the shape, or the quality of the paper, ceases to record in it, and procures another; a subsequent clerk, not so fastidious, resumes the old book and fills it; now is the first deed thus recorded in the old book duly recorded?  If not so originally, when does it become so?  How many deeds must be thus recorded to give the proceeding validity?

The objection in this case resolves itself into this.  The order of time was not observed.  Does this vitiate the record?  I apprehend not.  It might deceive a person examining the record, and it might not, and it is for this reason, that I hold the record sufficient to give effect to the deed, leaving it to the person who may be misled, to seek his remedy.

I have already remarked, that, in my opinion, a deed may be so recorded, as to give full effect to it, and yet the great object of the statute, the giving notice to third persons, may be defeated, as respects particular persons; and that the remedy for the person deceived, is by action against the town clerk, and not by avoiding the title.  I consider this a case of that description, because the irregularity complained of does not necessarily defeat the object of the law.  Whether that purpose is answered or not, in any particular case, depends altogether upon the degree of vigilence in the person inspecting the record.  He might discover it and he might not.  It will not do to say that this record could not be found, because it could not be found with the same facility, as if the proper order of recording had been observed.  It appears to me that the fallacy of the argument adopted by the court, consists in not observing the distinction, obviously created by the statute, between the duty which the town clerk owes to the person, whose deed he records, and his duty to others; and in considering the grantee responsible for the misconduct of the clerk, in regard to subsequent purchasers.

I do not contend, that the certificate of the clerk, that a deed is recorded, which is not in fact so, is of any avail; but I do not see

RUTLAND,
February,
1836.

Sawyer et al.
vs.
Adams.

how it follows, from this concession, that, if the deed be actually recorded, the record is null, simply because it can not be found with the usual facility.   Nor can I conceive how it is made out, that the recording a deed in a book exclusively devoted to that pur- pose, and which has for years constituted a legitimate portion of the town record, and must ever remain so, is equivalent to record- ing it upon a slate, or family record, which can, under no circum- stances, be considered a part of the record, and is never resorted to for such purpose.

In short, I find this deed recorded at length, and truly recorded, in the office of the town clerk under the direction of that officer, and in a book appropriated to that purpose, and no other, which is to every purpose and in the strictest sense a part of the record of the titles to land in that town, a book to which all concerned, resort to ascertain those titles, a book kept for the purpose of exhibiting those titles to the world, and I may add, kept for the purpose of recording deeds in the discretion of the clerk, so long as space is left in it to be occupied.   I think therefore, that the statute of con- veyances is complied with.

I find, indeed, that it is not the book into which the clerk, at the period of recording this deed usually transcribed his deeds.   But I do not deem this essential, for I am not prepared to hold this cir- cumstance, nor the fact that the proper order of recording, was not observed to be fatal to the party's title, which can not be made to depend upon the systematic arrangement of the record, or the fa- cilities afforded for examination.

I find further from the case, that the proper order of recording was disregarded by the officer with a fraudulent purpose, and that the proceeding is objectionable as it tends to conceal the deed from those interested in having knowledge of it.   But, I consider this as a breach of duty in the keeper of the public records, towards those who may have occasion to inspect them—and this fraudulent intent and fraudulent tendency, as a proper subject of judicial con- sideration, only in the contingency that some person is injured who seeks compensation for the injury.   If they have injured no one, I see not how the defendant's title can be vitiated by a culpable in- tent merely in a public officer, or an abortive attempt to defraud.

I feel a repugnance, on other grounds, to deciding this case for the plaintiff.   Enough appears, to show satisfactorily that the debt- or of these parties, the town clerk, must be wholly insolvent.   If it were not so, this controversy would not have arisen.   The con- sequences of our decision must therefore fall upon the town.

RUTLAND,
*February*,
1836.

Sawyer et al.
*vs.*
Adams

They must indemnify the defendant, and are thus made responsible indirectly for the plaintiff's debt. Now, before this is done, I wish to know, whether the plaintiffs have been injured by the misconduct of the town clerk. Let them bring their suit, and let it be made to appear whether they inspected the records, or applied to the clerk for information. If they did not, but attached at random, then they are not injured, and have no cause of complaint. If they did, and were advised of the mortgage, and of the manner in which it was recorded, the case is the same, and the town should not be made responsible. If they applied and were misled, let them show it, and recover for what they have suffered. But in the course we are taking, they are relieved from the burthen of this proof. We set aside the defendant's mortgage, upon the ground, that the plaintiffs may have been injured, without knowing whether they have been so in fact or not; and we cast it upon the town to indemnify the defendant, without giving them an opportunity to examine and contest the question, whether the plaintiffs, for whose benefit this is done, have any reason to complain, either of the town, or its agent.

Entertaining these views, I have thought it my duty to express them, and I do so the more readily, as I am authorized by our associate, who is now absent, (Justice Royce,) to say that he concurs with me, in the opinion I have expressed.