Caldwell, J.
The facts of this caso are substantially as follow: On April 16, 1842, Lemuel Granger, who was then the owner of the land of controversy, mortgaged it to Simoon Jennings, to secure the payment of a promissory *note for $273, payable in three years from date. On Juno 8, 1844 (the mortgage debt still existing), it was agreed between the parties, that Jennings should purchase the mortgaged promises, for the sum of $310 ; that the mortgaged debt, so far as it went, should be taken in consideration of the land; and that the balance should bo paid in money. In accordance with this agreement, Granger conveyed the promises to Jennings, but the mortgage was not entered satisfied on the record. The deed, which bears date Juno 8, 1844, was recorded June 19, 1844. The recorder made a mistake in the record of the deed, in the name of the grantor, recording the name as Samuel Granger, when the name in the deed, and the true name, was Lemuel Granger.
In June, 1846, Jennings made a lease of the land to Granger, *225 who still remained in possession, for three years ; this lease Wood surrendered to Jennings in Juno, 1847.
On April 4, 1845, Lemuel Granger conveyed this same land to the defendant, Robert Wood ; the deed was recorded on November 6, 1845 ; in the record of this deed, the recorder made the same mistake that was made in the case of Jennings’deed, recording the name of the grantor as Samuel, in place of Lemuel. Granger remained on the premises until the summer of 1847, when he left the country. Wood, the defendant, went into possession of the premises a short time before Granger left, and has been in possession of them ever since. Jennings has never been in actual posof the premises. There is no evidence that Wood ever had actual notice of the conveyance to Jennings, or of his having any claim on the property. Indeed it would appear that Jennings was not free to disclose his claim.
Lorenzo Roath, who lives in the neighborhood, a witness who was sworn on the trial, states that he had a conversation with Jennings shortly before Granger left; that Jennings asked him if Wood had purchased the property, and that he inquired whether or not Wood was making improvements on it. He says Jennings did not set up any claim to the property; he states *that Wood found out Jennings’ claim as soon as any one else; but that he (Wood) did not hear of it until after Granger had left.
Jennings-himself states, in an answer to a bill in chancery, filed against him in reference to the same matter, that the first conversation he had with Wood, was in the spring of 1847, (when the subject of Wood having purchased the land, was matter of conversation); that he did not say anything to Wood about his claim on the land, as he thought it more prudent to examine into the facts, examine the records, etc., than to make known his claim, to one claiming adversely, and that therefore he refrained from making known his claim—apparently, as it would seem to us, acting on the presumption that Wood was not acquainted with his claim to the property. This is unimportant, however, as there is no evidence (as we have before remarked) going to show that Wood had actual notice of Jennings’ title, and it is for the opposite party to prove that fact.
The court of common pleas charged the jury that the record of the deed of Simeon Jennings was no notice to Wood of the title *226 of Jennings to the lands in controversy, such as would prevent his (the said Wood’s) title attaching to said lands.
The jury returned a verdict for the defendant; a motion was made for a new trial, which was overruled, and judgment entered on the verdict. It is assigned for error, that the court erred in not granting a new trial, and also in the charge to the jury. The error assigned to the charge of the court to the jury, presents the principal question in this case.
Was, then, the record of Jennings’ deed such a record as to charge Wood with legal, or constructive notice of Jennings’ title?
If Jennings had delayed to put his deed on record for more than six months, his title would have not have availed him against a purchaser, who had purchased subsequent to that time, without actual notice of the existence of his title. And why? *Because he had failed to put on record that notice which would enable every person, by the ordinary inquiry—by an examination of the records—to ascertain its existence. The obligation rests on the party holding the title, to give the notice. He controls the deed ; he can put it on record or not, at his pleasure. If from any cause he falls short of giving the legal notice, the consequences must fall on himself. It is his own business, and he must suffer the consequences of its being imperfectly performed. Did Jennings have notice of his title placed on record? He did not; the deed put on record purported to be a deed from a different person. It is only by the names of the parties conveying, that a claim of title can be traced. Take the title in controversy as an illustration.
If a person had gone to the record to ascertain the situation of this title; if, commencing at the source of titles, he had traced it down from grantee to grantee, until he should have found that the title had passed to Lemuel Granger, then all that he would have had to do to ascertain whother the record showed any conveyance from Lemuel Granger, would be to examine the index, to ascertain whether any conveyance had been made by Lemuel Granger; if none such appeared, then the record would give notice of no such conveyance. It would give him notice, however, that the title was still in Lemuel Granger.
The reason that a party is chargeable with constructive notice, is, that by an examination of the record, he will have actual notice. The deed actually shown on record, was by a person who *227 had nothing to do with the title, and was, to all intents and purposes, a different conveyance from the one by which Jennings claims. But it is said that Jennings had a good deed, and that he had done all that it was necessary for him to do; that the mistake was that of the recorder, and that he should not suffer for the default of the officer. It may be a hardship on Jennings—it no doubt is; but here one of two innocent persons must suffer ; and whenever this is the case, the rule is, that *the misfortune must lie where it has fallen—it must rest on the person in whose business, and under whose control it happened.
The case of Sawyer & Rogers v. Adams, 8 Vt. 172, is very much in point in this case. In that instance, the town clerk had recorded a deed in a book that had ceased for a number of years to be a book in which deeds were recorded, and failed to put the names in the index. In that instance, as in this, the recorder made the usual entry of the record on the back of the deed. The court decided that the deed could not be said to be recorded, and consequently it was no notice to subsequent purchasers. The court say: “ In such cases the purchaser may be wholly free from fault or negligence. He may deliver bis deed to the proper officer, and it may be returned to him as recorded; but, through accident or design, it is not truly recorded. Subsequent purchasers or creditors, having no other means of knowledge of the contents of the deed than by resorting to the records, can not be considered as having notice of any other conveyance than such as appeared on record.” The case of Sawyer v. Crague, 10 Vt. 555, is of a similar character. There the deed was duly presented for record; but the clerk, by mistake in the description of the lot, put the words “west half,” in place of the words “east half,” in the record; the court held that no record had been made of the deed, and that a subsequent purchaser took the property without notice.
But it is contended that Jennings had a right to recover, by virtue of his mortgage; that that mortgage still remains on record uncancelled, and that the note secured by it fell due in 1845, before the commencement of the suit; that the conveyance to Jennings of the fee was merely a conveyance of the equity of redemption, and that Jennings still bad the right to set it up to protect himself against subsequent purchasers. The payment of the mortgage debt, both in equity and at law, operates as an extinguishment of the mortgage.
*228 But it is said that the mortgage debt was not paid. It is true the money was never paid; but that which the parties ^treated as its equivalent was paid. A deed in fee simple was given for the property. Part of the consideration was paid in money, and the balance by Jennings delivering to Granger the note secured by the mortgage; and this was done before the note became due. When the note was thus paid off, we can not see how any vitality could remain in the mortgage that was given solely for the purpose of securing the payment of the note. The debt of Granger had ceased to exit was, as we think, paid, and if the mortgage was not entered cancelled, it should have been. Nor was there anything in the sale of the property that went to vitiate it. Jennings received a,complete title for the property, and if his deed had been duly recorded, his title would have remained perfect.
As an item of notice on the record, the mortgage merely gave notice of its own existence; the existence of no other deed could be inferred from it. We think the court of common pleas ruled correctly, both in the charge to the jury, and in overruling the motion for a new trial.
The judgment of the Supreme Court will therefore be affirmed.