Spalding, J.,
dissenting.
This is a writ of error to the Supreme Court of Stark county, and the error assigned is, that the court on the circuit affirmed the judgment of the common pleas, rendered upon the following state of facts, as made known by the bill of exceptions:
The action was ejectment, tried at the May term of the common pleas of Stark county, A. D. 1851.
The plaintiff, to sustain the issue on his part, produced his evidence as follows:
" 1. A deed from Lemuel Granger to Simeon Jennings, for the premises in question, bearing date June 8, 1844, with indorsement thereon by the recorder of Stark county, in these words:
*“Received June 19, 1844. Recorded same day in vol. 31, p. 358.
“ John Bower,
“ Recorder for Stark Go., Ohio.”
This indorsement by the recorder was admitted in evidence without objection.
Accompanying the deed just mentioned, were the depositions *229 of the two subscribing witnesses, proving its execution, etc., by the grantor.
II. A transcript of the records of deeds in Stark county, showing what purported to be a conveyance of the lands in controversy, from Samuel Granger to Simeon Jennings, and bearing date, June 8, 1844. Received and recorded June 19, 1844.
III. A lease of the premises from Simeon Jennings to Lemuel Granger, dated June 13, 1846, for three years, at $28 a year, rent; with due proof of its execution and acceptance by Granger, and its subsequent cancellation on Juno 12, 1847.
IY. A mortgage deed from the records of the county, of Lemuel Granger to Simeon Jennings. This deed bears date, April 16, 1842, and was recorded the same day. It conveys the premises in dispute to Jennings, with a condition that the deed shall be void if Granger shall pay to Jennings $273, with the interest within three years.
The plaintiff here rested his case.
The defendant then produced the following evidence on his part:
I. A duly certified copy of a deed from Lemuel Granger to Robert Wood, of the same premises, dated April 4, 1845, and recorded March 31, 1849.
II. The answer of Simeon Jennings to a bill in chancery, filed against him by Robert Wood, in the common pleas of Stark county. In this answer Mr. Jennings gives account of the money' advanced by him from time to time, to Granger. He admits an allegation in the bill to be true, that on ^February 6, 1839, said Lemuel Granger executed and delivered to him a mortgage deed of the same premises, to secure the payment of a note for $130, payable in one year from that date, with interest; which mortgage deed was recorded in Stark county records, he thinks, in the book and upon the page set forth in the bill.
He admits that on March 2, 1841, said Granger executed to him a second mortgage of same premises, to secure the payment of a note for $54. And on April 16, 1842, said Granger executed to him a third mortgage of the same lands, to secure the payment of a note for $273, which embraced the amount due on the two first notes.
He says all three of said mortgage deeds were on record in Stark county before said Robert Wood pretended to purchase said *230 land from said Lemuel Granger, and that they were in no wise satisfied, and that no part of the money has at any time been paid, which they were given to secure.
He says, that on June 8, 1844, said Granger applied to him to become the absolute purchaser of the mortgaged premises, and that he did, on that day, purchase the premises at, and for the price of $310; and the amount then due from said Granger being deducted from the purchase price, he paid to him (Granger) the balance in money, and took his deed in fee simple, with the usual covenants, which said deed he deposited, on June 19, 1844, with the recorder of the county, for record.
He denies that any of said mortgages, remaining of record, as aforesaid, have been satisfied or paid in any other way than as herein set forth.
The defendant then called Lorenzo Roath, who testified that plaintiff Jennings was never in possession of the premises, to his knowledge; that Granger left over two years ago, and that Wood was in possession a short time before Granger left; that Jennings asked him if Wood had purchased the farm, and whether he was making any improvements. Witness told him ho was. Jennings, at that time, as witness heard, set up no *title to the premises. Witness did not hear that Jennings laid any claim to the land until Granger had left.
Witness being cross-examined, says: There was no other Granger in that neighborhood—no other man by the name of Granger. Wood found out that Jennings laid claim to the land as soon as any other person, but not till Granger had gone. It is about three years, it may be four, since Granger left.
Soon after Granger left, Jennings informed Wood that he claimed the land. Witness is a brother-in-law of Wood.
Defendant here rested.
The plaintiff then called Joseph J. Brooks, who testified that Granger left the country in the summer of 1847.
He also offered in evidence a duly certified copy of a deed of the same premises, from Samuel Granger to Robert Wood (the defendant), dated April 4,1845, and recorded in the records of Stark county, November 6, ?845.
It was agreed on the trial, that the title to the lands in the declaration mentioned, was in Lemuel Granger, before any of the foregoing deeds and mortgages were made, and that he was the *231 common source of title. This was the testimony, and the whole testimony, in the case.
Among other things, the court charged the jury, that the record of the deed to Simeon Jennings, wherein the name of the grantor is written by the recorder, Samuel Granger, instead of Lemuel Granger, as in the original, was no notice to Wood of the title of Jennings to the land in controversy; that it would not prevent Wood’s title attaching to said lands, under his deed, which was recorded March 30, 1849. An exception was noted to this ruling of the court.' The jury returned a verdict for defendant.
The plaintiff filed his motion for a new trial, for the reasons that: 1. The verdict was against the evidence. 2. The verdict was against the law. 3. The court erred in their charge to the JU1T-
The court overruled the motion for a new trial, and the plaintiff excepted.
*1 maintain that the judgment of the court of common pleas was erroneous, and should have been reversed by the Supreme Court on the circuit, for the following reasons :
1. The plaintiff in ejectment showed himself entitled to recover, when he had introduced on the trial the original deed in foe simple from Lemuel Granger to Simeon Jennings, bearing date June 8, 1844, with proof of its execution, and the certificate of the proper officer, that it had been duly recorded on the 19th day of June, in the same year.
This proof, as I apprehend, rendered the plaintiff’s position impregnable, as against every assault that could be made upon it in a court of law, except through the instrumentality of a prior grant.
It will not do to say that a transcript from the record of deeds, showing a conveyance from Samuel Granger to the plaintiff’s lessor, of the same premises, dated and recorded on the same day, shall divest Jennings of the fee. Non constat but what this was a different instalment. If the defendant would prove it to be the recorded grant under which the plaintiff claimed, the recorder should have been called to show its identity.
But admitting, for the argument’s sake, that which might have been proved, that the recorder, in transcribing the deed of Lemuel Granger to Simeon Jennings, of June 8, 1844, had fallen into the very natural error of writing the name of the grantor upon the *232 records, “Samuel,” instead of “Lemuel,” would it have vitiated the grant? I think not—not even if a subsequent purchaser had been misled thereby, which is hardly a supposable case.
The deed had been made by Lemuel Granger, upon sufficient consideration, and he had delivered it to Simeon Jennings under all the solemnities of the law. The grant was defective in no one particular. As between the parties, nothing now remained to be done. For the benefit of third persons, however, and to protect them against the possible imposition of the grantor, our legislaturo has wisely provided that *“all deeds for the conveyance of lands shall be recorded within six months from the date thereof; and if such deeds shall not be so recorded within the time prescribed, the same shall be deemed fraudulent, so far as relates to any subsequent bona fide purchaser, having at the time of making such purchase, no knowledge of the existence of such former deed; provided, that such deed may be recorded after the expiration of the time herein prescribed, and, from the date of such l’ocord, shall bo notice to any subsequent purchaser.”
The act prescribing the duties of county recorders provides, “that upon the presentation of any deed for record, the recorder shall indorse thereon the date of its presentation ;• and, if required, shall give to the person presenting the same, a receipt therefor, without fee or reward, naming in such' receipt the parties to the deed, the date thereof, and giving a brief description of the promises. And when such deed shall bo recorded, the recorder shall indorse thereon the time when recorded, and. the number or letter, and page or pages of the book in which the same is recorded."
Now, I affirm, that under the laws of Ohio, when a grantee has presented his deed, within six months of its date, to the recorder, and demanded that it be placed on record, and the recorder has returned to him the instrument with his indorsement thereon, showing it to have been recorded, with the time when, and the book and page where it has been done, he has discharged his whole duty to the public, and his muniment of title can not be shaken by any subsequent incumbrancer.
The recording officer is undoubtedly liable in damages to any person injured by his improper conduct. So says our statute. But who, in the case under consideration, is the injured party? It is difficult to tell. The true test to ascertain if any injury has, in fact, resulted from the slip of the recorder’s pen, is to-drive the *233 defendant to his action against that officer. The record was made for his benefit, and to apprise him in due season that the land had been conveyed. If by reason of a mistake in the recording officer, he has *not received from the records that notice of the incumbranco upon the land, which would have put a prudent man on his guard when about to purchase the premises, he ought to recover, in a suit against tho recorder, any amount of money that he may have lost through such want of notice. This would lead to an investigation of the circumstances under which tho second deed was made; and as a preliminary to the establishment of a right of recovery, the second grantee would be required to show that he had applied at the proper office for information in regard to the extent of the incumbrances upon the land in controversy. He might, or he might not, be able to prove that he sought for information as to tho title, before he received his deed and parted with his money. Nothing of the kind appears in the evidence brought to our notice in the present ease. If he did not take tho precaution to apply to the recorder for the necessary information, surely he has not been injured by the mistake that occurred in the record, and the officer should not be hold amenable to any one. If he did apply, and caused a search of tho records to be made, then a source of information would have come within his reach, which I shall’notice under my second head.
My proposition now is, that the deed, being well executed, as between grantor and grantee, and having received the indorsement of the recorder of the county, that he has placed it duly on record within tho time limited by law, can not bo impeached by evidence tending to show a mistake in the record. The case of Beverly v. Ellis & Allan, decided by the court of appeals, in Virginia, in 1822, 1 Randolph, 102, strongly sustains this position.
In Janury, 1808, Carter Beverly conveyed to Peter R. Beverly five hundred acres of land in Culpeper county, by deed of bargain and sale. This deed was left with the clerk of the county to be recorded, hut before it was copied into the record book, the deed was lost or destroyed through the negligence of the clerk.
Subsequently the land was conveyed by Carter Beverly to ^Copland & Williams, in trust, for the purpose of securing the payment of certain sums of money to Ellis & Allan, merchants. The land was sold under the deed of trust, and Ellis & Allan became the purchasers. The bill was filed against Carter Beverly, *234 Ellis & Allen, by Peter R. Beverly, to obtain a decree for the conveyance of the land. Ellis & Allan filed their answer, giving an account of the manner in which their debt arose against Carter Beverly, and of the execution of the trust deed to secure the same.
They said they had no knowledge or suspicion that there was any claim to the land, except a certain dower right, and denied that they ever heard of complainant’s claim until the land was advertised for sale; that they had made diligent inquiry in all the offices where the said deed must have been recorded, and found no incumbrance on the land. They claimed to be innocent purchasers, without notice, and for a valuable consideration.
It was proved by the oath of the deputy clerk, that on January 18, 1808, a deed was acknowledged from Carter Beverly, to Peter R. Beverly ; that before said deed was copied into the record book, he believed it was taken from the office, privately, by some person to him unknown ; that a diligent search had been made for it, but it had never been found.
Section 1 of the act “regulating conveyances,” in Tirginia, required the deed, after acknowledgment, etc., “ to be lodged with the clerk of the court, to be there recorded.” In section 4, the same act acquired “ the deed to be recorded,” etc. Judge Brooke delivered the opinion of the court:
“ The court is of opinion that, on a sound construction of the act entitled ‘an act regulating conveyances,’ and upon the facts in the record in relation to the deed in question, the appellees had that constructive notice of the prior right of the appellant to the land sold under the deed of trust, which that act affords to subsequent purchasers when its provisions are complied with. The certificate of the clerk that the deed was ^acknowledged and ordered to be recorded, and the fact, proved by his deposition, that it was lodged with the clerk to be recorded, was, on the part of the appellant, a full compliance with section 1 of the act.” . . . “Nor would that construction be tolorated, which would make it depend on the acts or omission of the clerk, over whom he has no control, and with whom the law compels him to dejmsit his deed. A different construction would be attended with great mischief. The act having prescribed no time to the clerk to record a deed, by spreading it on the record, its validity would be fluctuating and uncertain, and the object of the act defeated. ‘ If there is any defect in the notice when searched for, the subsequent pur *235 chaser, perhaps, has his remedy against the clerk, if it was his duty to make it perfect. If the deed, in this case, would have given more perfect notice, by the inspection of it, the appellant being compelled by the act to lodge it with the clerk, his loss of it would more properly subject him to the action of the subsequent purchaser, in the event that he sustained damage.”
The complainant had a decree in his favor.
In Administrator of Nye v. Estate of Manwell, 14 Vt. 14, it was said said by Judge Redfield, in giving the opinion of the court: “It is true that a deed of land, to be admitted as evidence, even in a suit between the parties, if proved only by the acknowledgment of the grantor, must be first recorded. But when the clerk of the proper office has duly certified, upon the deed, that it-has been properly recorded, we do not think the effect of the evidence can be defeated by showing a mistake in the record; certainly not, where that mistake does not affect the interest of the person against whom the evidence is offered.”
In the case of Sawyer et al. v. Adams, 8 Vt. 172, which was a majority decision like the one I am considering, and, if I may be allowed to express the opinion, equally erroneous, Judge Phelps, in his dissenting opinion, takes occasion to say: “By section 5-of the act relating to conveyances, *Rev. Laws, 167, it is required that deeds of lands ‘ be recorded at length in the clerk’s office of the town in which such lands lie.’ ... I admit that the deed must be recorded at length in a book which is already, or which becomes upon the recording of the deed, legally a part of the record of land titles in the town. But when that is done, I hold the title to be perfected. I can not admit that the town clerk is thereafter to be regarded as the agent of the party whose deed is recorded, for the purpose of giving notice of the deed, nor that the party is responsible for the officer’s doings. Hence, if the town clerk should afterward obliterate, obscure, or even tear out the record, it would not, in my apprehension, defeat the title, . . . Suppose the clerk should destory his alphabet, which would render it necessary to examine the whole record in course y could it be said that the record would be rendered null and the titles defeated ? . . . The objection in this case resolves itself into this : The order of time was not observed. Does this vitiate the record ? I apprehend not. It might deceive a person examining the record, and it might not; and it is for this reason that- *236 I hold tho record sufficient to give effect to the deed, leaving it to the person who may be misled, to seek his remedy.
“I have already remarked, that, in my opinion, a deed may be so recorded as to give full effect to it, and yet the great object of the statute, the giving notice to third persons, may be defeated, as respects particular persons; and that the remedy for the person deceived, is by action against the town clerk, and not by avoiding the title."
In Alabama, where the registry laws are very similar to our own, it has been decided that the deposit of a deed for record is equivalent, so far as the question is connected with registration, to the recording of the deed. Dubose v. Young & McDowell, 10 Ala. 368. See also Greenleaf’s notes to Cruise on Real Property, vol. 2, p. 546, where the learned commentator says: “And a deed is registored in contemplation *of law when it is entitled to registration, and is deposited with tho register, in his office, for that purpose.”
In Piatt v. St. Clair’s heirs and others, Judge Wright, in his Ohio Supremo Court Reports, 529, remarks : “ This deed was recorded, but the recorder, in searching for conveyances, in the multitude of them, by mistake overlooked this. . . . The question before us is not one of notice to an after-purchaser of the same property; but if it were, th a fact of tho deed being on record would be conclusive; the mistake of the recorder, in overlooking it, could not have the effect of divesting the legal title from one guilty of no laches or fault." So in the case at bar: Tho deed of Jennings was recorded. It showed him to be the proprietor, in fee simple, of the identical tract of land, fairly and fully described by its metes and bounds and number of acres. It further showed that the land conveyed was the same land that Granger then resided on, and the brother-in-law of Wood swore that no person by the name of Granger, excepting Lemuel, lived in that neighborhood. The mistake of the recorder in writing the name of the grantor npon his record or in his index, would not divest the legal title from Jennings, who was “guilty of no laches or fault.”
If a slip of the pen, a mere clerical error of the recorder, is to Have the effect to avoid the grant without any fault in the grantee, then it behooves the legislature speedily to provide an additional officer for each recording office—one whose duty it shall be to compare every word with the original deed, and see to it that the *237 letters are all crossed and dotted in strict similarity with those in the writing which is copied; and even then mistakes may intervene, which, under the present decision, will oust the first grantee of his title.
The only safe and sensible rule, is to hold a deed to be recorded or registered, in contemplation of law, when it is “ entitled to registration,” and is deposited with the recorder, in his office for that purpose. If through any fraud, neglect, or mistake of the recording officer, the proper notice is not conveyed to a subsequent purchaser or incumbrancer, who suffers prejudice *thereby, let the person thus injured by lack of notice have his redress upon the man who “makes the mischief.” The Bank of Kentucky v. James Haggin, 1 Marsh. 225.
I. The defendant, Wood, at the date of its conveyance from. Granger, had notice of the prior grant to Jennings—if not actual, at least sound constructive notice ; and therefore, his purchase was made mala fide, and can not avail him, as against the prior unrecorded deed.
In Cunningham v. Buckingham, 1 Ohio, 264, Judges Hitchcock and Burnet held, bn the circuit, that “ the omission to record a deed, did not necessarily render it void. That its validity or invalidity depended on the fact of notice, which might be proved by the same description of evidence that is admitted in other cases. That violent presumption, or the proof of such facts as imply notice, was sufficient......That a man was not at liberty to shut his eyes against the truth and shelter himself under the plea of ignorance. That where a fact comes to his knowledge, that necessarily puts him on his guard, he is bound to make diligent inquiry, and to search for information at the sources from ¡which it is most natural to expect it.”
Again, in Leiby v. Wolf (10 Ohio, 84), Lane, Ch. Justice, in giving the opinion of the whole court, says : “ Whenever the state of the title on the record would lead a searcher of incumbrances, who was using common prudence and care in investigating a title, to a knowledge of a fact, the law assumes that he acquired the knowledge of it. A purchaser from Wolf, therefore, ought to learn all conveyances from Wolf existing on the record at the time of his purchase.”
Apply this doctrine to the case at bar, and what becomes of *238 Wood’s, claim that he is a bona fide purchaser without knowledge of the existence of Jennings’ deed?
In the first place, I hold that the very slight difference in the formation of the two first letters (when written) of the Christian names Lemuel and Samuel, would of itself, put a man of ^ordinary prudence upon his guard, and lead him to examine “the premises” in the deed.
But before l: the searcher of incumbrances ” would come to this, when examining the title of Lemuel Granger to the lands in controversy, he would find, regularly entered of record in the reccorder’s office of Stark county, a mortgage deed from Lemuel Granger, to Simeon Jennings, of the premises in question, bearing date February 6,1839, given to secure the payment of a note for $130, payable in one year.
He would also find, duly recorded, another mortgage deed from Lemuel Granger to Simeon Jennings, of the same premises, bearing date Mai’ch 2, 1841, given to secure the payment of a note for $54.
Ho would also find, duly recorded, another mortgage deed from Lemuel Granger to Simeon Jennings, of the same premises, bearing date April 16, 1842, given to secure the payment of a note for $273.
After making these discoveries, the candid inquirer would seek to ascertain from the record, or from the mortgagee, whether these incumbrances had been removed. If from the record, ho should, in turning over the leaves, find, in a modern index or alphabet, mention made of a deed from Samuel Granger to Simeon Jennings, but nothing further from Lemuel Granger, he would say at once, as the witness said in court, “there is no other Granger living in this community but Lemuel, and as this deed appears to be made to Simeon Jennings, the mortgagee, it is worth my while to read the description of the premises conveyed.”
In doing this, he would meet with actual notice of the grant. And so if he should apply to Jennings, the mortgagee. He would be told what he could not learn from the record, that the mortgages were satisfied, not by the payment of the money, but by a conveyance in fee of the premises from Granger to Jennings.
In truth, it would seem that on which side soever the inquirer * mi ght turn, he would encounter unmistakable signs of the claim of Jennings to the land.
Did Robert Wood make an investigation of the title before he *239 took from Granger a deed of the land ? If he neglected to inquire, it was at his peril, and he is in that ease chargeable, constructively, with notice of what he might have loarned had ho made an examination.
Rogers v. Jones, 8 N. H. 269 ; Jackson ex dem. Gilbert v. Burcott, 10 Johns. 457; Kendall v. Lawrence, 22 Pick. 540; Newman v. Chapman, 2 Rand. 93 ; Worseley v. De Mattos, 1 Barr. 474.
III. I insist, moreover, that the plaintiff below was entitled to recover upon the introduction of either one of the three mortgage deeds from Lemuel Granger to Simeon Jennings, all of which had become absolute at law, were prior in date to defendant’s deed, and all duly recorded.
But it is claimed that these mortgages were satisfied by the delivery of the absolute deed, and consequently that they would not support the action of ejectment.
The great error into which a majority of the court has fallen, as I apprehend, is this, that they venture to treat a mortgage as satisfied, without satisfying the debt which the mortgage was given, to secure. So far as the records of the county show, the-condition of each one of these mortgage deeds is broken, and there is no entry, whatever, of satisfaction.
The parol proof offered on the trial below, tended to show that the absolute deed was designed to satisfy the mortgage debt, but it also appeared that not one dollar in money had been paid by the mortgagor for this purpose.
The great difficulty with this decision is, that it permits those claiming under the mortgagor to set up the absolute deed for one purpose, and to break it down for another. It is a sufficient deed to operate as a satisfaction of the mortgage debt, and to oust Jennings of the fee which vested in him upon the breach of the several conditions in the mortgage deeds ; but having answered that end, it is good for no. other purpose whatever.
*If this absolute deed is inoperative by reason of the mistake committed by the recorder, and the land does not pass to Jennings, how, in the name of common sense, has the mortgage debt been paid ?
But this is all wrong. The legal title to this land was in Jennings, from the time the condition in the first mortgage deed was broken, in February, 1840. The deed of June 8, 1844, was *240 useful for no other purpose than to convey to him the equity of redemption, until then, outstanding in Lemuel Granger.
The acceptance of this last deed by Jennings did not have the effect to extinguish any one of the mortgage deeds. All or any of them could bo kept open, if the interest of the assignee of the equity required it. 7 Greenl. 381; 6 Serg. & Rawle, 559; 5 Pet. 481.
In Hughes v. Edwards, 9 Wheat. 499, the court say: “ The mortgagor after forfeiture, has no title at law, and none in equity but to redeem upon the terms of paying the debt and interest. His conveyance to a purchaser with notice, passes nothing but an equity of redemption, and the latter can, no more than the mortgagor, assert that equity against the mortgagee, without paying the debt or showing that it has been paid.”
The case of Warner v. Winslow, 1 Sanford’s Ch. 430, is in many of its prominent features, “ on all fours ” with the case at bar, and shows clearly and conclusively, that after Jennings had purchased in the equity of redemption from Granger, the mortgage deeds would be rendered operative to protect his interest in the land, even though the mortgage debt should have been paid. If the mortgage deeds were operative, I suppose no one will doubt the right of the plaintiff below to recover in ejectment.
In Frische v. Kramer’s Lessee, 16 Ohio, 138, Judge Hitchcock laid down the law correctly, “ that after condition broken, the mortgagee may maintain ejectment for the land against the mortgagor, or any one claiming under him.”
*On either one of these three points, I would have advised that the judgment below be reversed.