The Manistique Lumbering Company v. Allen P. Lovejoy and I. Graham.

*Injunction against execution sale—Bona fide purchaser— Verification— Fraud in obtaining judgment—Circuit Court Commissioner.*

1. A bill to restrain a sale on execution is not one to quiet a title, but may be one to remove therefrom a cloud arising out of proceedings said to be invalid.

2. A bill to restrain a sale on execution in a proceeding at law against a third person will hardly lie when the only equity complainant asserts is that he is a bona fide purchaser.

3. A complainant seeking in equity to restrain attachment proceedings on the ground of defects therein, is bound to point out the defects on which he relies.

4. Equity will not deal with patent defects in a title already completed under an execution sale; its validity can be tried in proper proceedings based on or aimed against it. Nor will equity restrain a defendant who has complied with the law in his preliminary steps, and before complainant has obtained any standing from proceeding to a sale, after which the respective merits of the titles can be litigated.

5. A bill asking for a preliminary injunction must be sworn to on personal knowledge of facts that will justify its issue, or reason must be shown for the absence of such verification.

6. Proceeding to judgment in attachment proceedings with knowledge of another's claim against the property attached, is not fraud and will not therefore warrant a circuit court commissioner, on allowing an injunction to restrain proceedings, to dispense with security.

7. A circuit court commissioner cannot allow an injunction without notice to stay proceedings at law. Chancery Rule 112.

Appeal from Schoolcraft. (Steere, J.) Oct. 16.—Oct. 22.

BILL to clear title. Defendants appeal. Reversed.

*W. F. Riggs* for complainant.

*Ball & Hanscom* for defendant.

CAMPBELL, J. The bill in this case was filled to restrain defendant Lovejoy from selling land on an execution upon attachment proceedings against Dugald McMillan. Graham is brought in as sheriff. The bill seeks a perpetual injunction and release. Defendant Lovejoy demurred generally, and his demurrer was overruled, and he appeals from that order.

It is difficult, from the very peculiar framing of this bill, to know on what ground of equity complainant meant to rely. There is nothing in it from beginning to end which makes definite averments of fact and indicates the use to be made of them. But the complainant's brief filed in this Court rests the case upon the ground that complainant became a bona fide purchaser after the proceedings in attachment had progressed to nearly a completion, and before judgment, and

that the proceedings were void for non-compliance with the statute, and were not properly recorded in the register's office.

The bill, in setting out its derivative title does not aver what interest McMillan originally had, or had at the time of defendant's levy, but merely that he had an "undivided interest." It avers that on the 29th day of December, 1882, he conveyed by warranty deed his "estate, right, title and interest," but whether it was the same as when the attachment was levied, or how much it was, in no way appears. It is also averred that at that date he was paid "for his said title and interest in said lands" one thousand dollars and more. As the lands amount to several thousand acres of what it is to be inferred from the bill are valuable pine lands, it is evidently not impossible that his interest was regarded as very small or else purchased at somewhat remarkable rates for a bona fide purchase for value. The allegations are very meager.

But passing over this defect, the bill is not a bill to quiet title, because as yet it appears there is no execution sale made. It can only be regarded as a bill to remove a cloud from complainant's title, arising out of proceedings alleged to be invalid.

The only equity relied on is that complainant is a bona fide purchaser. But we think it is very difficult to find any authority for stopping unfinished legal proceedings against third persons on any such ground. Lord Hardwicke, in *Patterson v. Slaughter* Amb. 293, laid it down very broadly that the claim of a bona fide purchase was available in equity as a defense, but not as a basis of action for a complainant. *Beekman v. Frost* 18 Johns. 544 is very emphatic in denying the use of such a claim for offensive operations. And in *Stockton v. Williams* 1 Doug. (Mich.) 546, it was said that "no rule is better established than that a court of equity will not restrain a person from the assertion of title in the course of judicial proceedings, or decree a release by one to another, unless in a case entirely free from doubt." Pages 566-7. As the bill avers McMillan to be irresponsible, it is evident that defendant's claim, which is much larger than the alleged payment to McMillan by complainant, and

accrued earlier, gives him a very strong equity prior in time
to complainant's, and that if complainant has a superior right
it is a legal one under the recording laws and not an equita-
ble one, and depends entirely on the failure of the attach-
ment for alleged irregularity.

But in setting out the attachment proceedings there is no
attempt to point out wherein the illegality consists. Instead
of averring the absence of one or more jurisdictional require-
ments, the bill throws together what it calls a "substantially
true transcript" of the proceedings, and leaves the court to
grope its way through this mass which is not even arranged
chronologically, to find out as it best may the absence of
some important jurisdictional requisite. This is not fair or
proper pleading. A complainant is bound to point out the
defects on which he relies. If the complainant had done so,
some, at least, of what counsel on the argument relied on as
defects, might be supplied. But when he sets out what is
not averred to be anything but a substantial transcript we
are left to conjecture what counsel may regard as falling out-
side of substance, and this is not sufficient.

Furthermore, it is to be observed that if it is true, as must
be claimed, that the court on a mere inspection of the papers
can see that these proceedings are void on their face, then it
is impossible for them to make a cloud on title. Complain-
ant claims that it has record priority, and if so, that title
cannot be injured by a later record based on a nullity. We
have not discovered any such defect, but inasmuch as if it
exists it is claimed by complainant to be patent, equity can-
not be called upon to deal with it. When title has been
completed under an execution sale, the validity of such title
can be tried by proper proceedings based on or aimed
against it.

There is nothing in the bill suggesting that the proper
steps were not taken to file the proof of attachment with the
register of deeds. How far the neglect, if any, of that officer
may prejudice defendant we need not now inquire. If
defendant complied with the law, he did so before com-
plainant got any rights, and there would be no equity in

preventing him from proceeding to a sale, and then having the respective merits of the titles fairly litigated.

. We discover no equity in the bill, and it should have been dismissed. We might leave the case here, if it did not present some peculiarities which we ought not to pass unnoticed.

It is a cardinal rule in equity that a preliminary injunction should never be granted without the oath of some one, from his own knowledge, of such facts as will justify it. In this case nearly all of the facts outside of the attachment record are set up on mere belief. The bill avers distinctly that these facts were within the knowledge of two members of the corporation, Abijah Weston and John D. Mersereau, who negotiated the purchase from McMillan. No reason is given why the bill was not signed and sworn to by some of its officers, although it is a domestic corporation ; but it is signed and sworn to by the solicitor of record, who swears to no personal knowledge, and to no reason why the bill is not verified by some one who had such knowledge.

The injunction was allowed by a circuit court commissioner, and it does not appear that any notice was given either to defendant or his attorneys, and no reason is given for dispensing with it. The bill is, and was regarded by the commissioner as, one to stay proceedings at law ; and in supposed compliance with section 105 of the chapter concerning Courts of Chancery (How. Stat. § 6695), which allows the officer allowing such an injunction to dispense with security on the ground that the verdict or judgment was obtained by actual fraud, the allowance here dispensed with it. The only fraud alleged here is the act of proceeding to judgment with knowledge of complainant's claim. This is not sworn to positively, but it would be ridiculous to call such steps obtaining the judgment by actual fraud.

But beyond this it is expressly provided by Rule 112 of the Chancery Rules, that a circuit court commissioner shall not under any circumstances stay proceedings at law by injunction without notice. He has no power to act at all in such a case, whatever may be done by the judge.

The order for an injunction was unwarranted, and by this

neglect of the statutory and rule requirements, defendant has been subjected to unauthorized interference and deprived of the redress in damages which the law contemplated he should secure in case of the dissolution of the injunction. Such an abuse of 'the process of the court cannot be passed by without notice.

The decree must be reversed and the bill dismissed with costs of both courts.

The other Justices concurred.